# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ANTHONY BOOTH** and
**JERRY BROWN,**

        **Plaintiffs,**

                                      **Case No.8:09-cv-02621-JSM-TBM**

**vs.**

**PASCO COUNTY, FLORIDA, and**
**INTERNATIONAL ASSOCIATION**
**OF FIREFIGHTERS LOCAL 4420,**
**d/b/a Pasco County Professional Firefighters,**

        **Defendants.**

---

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

ANTHONY BOOTH ("Booth") and JERRY BROWN ("Brown") (collectively referred to as "Plaintiffs") hereby sue PASCO COUNTY, FLORIDA ("Pasco County" or "County") and INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 4420, d/b/a Pasco County Professional Firefighters (the "Union") (collectively referred to as "Defendants") and in support thereof, allege as follows:

### Nature of the Case

1.      This is an action to remedy unlawful employment practices and civil rights violations brought pursuant to the Florida Civil Rights Act of 1992, Ch. 760, Fla. Stat. (2009) ("FCRA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and 42 U.S.C. §1981 ("§1981") through 42 U.S.C. §1983 ("§1983"). Plaintiffs seek equitable relief and damages including: declaratory and injunctive relief; back pay; compensatory damages; punitive damages; attorneys' fees, costs and other litigation expenses pursuant to 42 U.S.C. §1988 and §760.11, Fla. Stat. (2009); and all other relief this Court deems just and proper.

## Jurisdiction, Parties and Venue

2.      Booth is a citizen of the United States and a resident of Hernando County, Florida.

3.      Brown is a citizen of the United States and a resident of Pasco County, Florida.

4.      Pasco County is an employer within the meaning of the FCRA and Title VII and is located in Pasco County, Florida.

5.      The Union is a labor organization within the meaning of the FCRA and Title VII and is located in Pasco County, Florida.

6.      At all material times, Plaintiffs were employees and aggrieved persons within the meaning of the FCRA and Title VII.

7.      All actions complained of occurred in Pasco County, Florida.

8.      Jurisdiction is conferred on this Court by 28 U.S.C. §1343(a)(3)-(4) which provides original jurisdiction to this Court for all suits brought pursuant to §1983 and Title VII. Jurisdiction is also conferred on this Court by 28 U.S.C §1331 because the causes of action arise under the Constitution and laws of the United States.

9.      This Court has supplemental jurisdiction over Plaintiffs' FCRA claims pursuant to 28 U.S.C. §1367.

10.     This action was timely filed in the Circuit Court of the Sixth Judicial Circuit in and for Pasco County, Florida and was removed to this Court by the County pursuant to 28 U.S.C. §1331 and §1367. After Pasco County sought removal, the Union filed a Notice of Consent to Removal.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because Defendants reside in this district and/or because a substantial part of the events or omissions giving rise to the claims stated herein arose in this district.

## Compliance With Procedural Requirements

12.     Plaintiffs have met all conditions precedent and have exhausted all administrative remedies prior to the institution of this action including:

a.      On or about April 11, 2008, Booth timely filed a charge of race and national origin discrimination and retaliation against Pasco County with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") (hereinafter "Booth Charge 1").[1] A copy of said charge is attached as Exhibit A, which is incorporated herein by reference.

b.      On or about April 11, 2008, Booth timely filed a charge of race and national origin discrimination against the Union with the EEOC and the FCHR (hereinafter "Booth Charge 2"). A copy of said charge is attached as Exhibit B, which is incorporated herein by reference.

c.      On or about April 11, 2008, Brown timely filed a charge of religious discrimination and retaliation against Pasco County with the EEOC and the FCHR (hereinafter "Brown Charge 1"). A copy of said charge is attached as Exhibit C, which is incorporated herein by reference.

d.      On or about April 11, 2008, Brown timely filed a charge of religious discrimination against the Union with the EEOC and the FCHR (hereinafter "Brown

---

[1] Pursuant to §760.11(1), Fla. Stat., charges of discrimination filed with the EEOC are automatically deemed dual-filed with the FCHR on the date filed with the EEOC.

Charge 2"). A copy of said charge is attached as Exhibit D, which is incorporated herein by reference.

e.      On or about October 16, 2008, Booth timely filed a charge of retaliation against Pasco County with the EEOC and the FCHR (hereinafter "Booth Charge 3"). A copy of said charge is attached as Exhibit E, which is incorporated herein by reference.

f.      On or about October 16, 2008, Booth timely filed a charge of retaliation against the Union with the EEOC and the FCHR (hereinafter "Booth Charge 4"). A copy of said charge is attached as Exhibit F, which is incorporated herein by reference.

g.      On or about October 28, 2008, Brown timely filed a charge of retaliation against Pasco County with the EEOC and the FCHR (hereinafter "Brown Charge 3"). A copy of said charge is attached as Exhibit G, which is incorporated herein by reference.

h.      On or about October 28, 2008, Brown timely filed a charge of retaliation against the Union with the EEOC and the FCHR (hereinafter "Brown Charge 4"). A copy of said charge is attached as Exhibit H, which is incorporated herein by reference.

13.     Booth received a Notice of Right to Sue from the EEOC for Booth Charge 1 and Booth Charge 2 within 90 days of filing this action.

14.     Brown received a Notice of Right to Sue from the EEOC for Brown Charge 1 and Brown Charge 2 within 90 days of filing this action.

15.     More than 180 days have passed since Plaintiffs filed all of their respective charges with the EEOC and FCHR.

16.     The FCHR has not yet entered a determination on any of Plaintiffs' discrimination and/or retaliation charges.

17.     All conditions precedent to asserting a claim under the FCRA have been met pursuant to §§ 760.11(4) and (8), Florida Statutes.

### Facts

18.     Booth is Hispanic, and his national origin is Venezuelan-Spaniard.

19.     Booth began working for Pasco County as a Firefighter/EMT on August 25, 2003.

20.     Brown's wife's family is of the Jewish faith.

21.     Brown began working for Pasco County on January 21, 1997. At all material times, Brown was a Driver/Engineer.

22.     Both Booth and Brown became dues-paying members of the Union in 2005, when the Union first organized.

23.     Throughout their employment with Pasco County, Booth and Brown were qualified for their positions and were hard-working satisfactory employees.

24.     At all material times, Anthony Lopinto was the Emergency Services Director, the top official for the Pasco County Emergency Services Department (the "Department") with final policymaking authority for the Department including its employment policies, practices, customs and decisions.

25.     At all times relevant for the events described in this Amended Complaint, James Ciccarello was the Acting Assistant Chief for the Department, second only to Director Lopinto, with policymaking authority for the Department, including its employment policies, practices, customs and decisions, reviewable by Director Lopinto.

26.     Captain Mark Bodden, Booth's supervisor at Station 14, continually harassed Booth and behaved unprofessionally on a regular basis, such as yelling and berating Booth,

getting in Booth's face, and shouting vulgar words and profanity at Booth, often in the presence of co-workers, citizens and in public places.

27.     In addition, Captain Bodden consistently made racial comments in the presence of others so that Booth could overhear.  For example, Captain Bodden often referred to Booth as a "beaner" or made comments in general about "beaners," which is a derogatory term for Hispanics and Latinos.

28.     On another occasion, after Booth told Captain Bodden and other co-workers that he was going to Venezuela to visit his family, Captain Bodden remarked, "Why would you want to go there, you are stupid to go to a country like that?" or something to that effect.

29.     On or about May 24, 2007, Booth went on an emergency call with his crew. The patient was a small child, and Booth and the crew quickly learned that the mother of the patient did not speak English. The crew asked the mother if she spoke English and she said "No." The mother asked the crew if anyone spoke Spanish, in which the crew replied, "No." Firefighter/Paramedic Stacie Quisenberry made a racial comment, stating, "We are not in Mexico." Captain Mark Bodden laughed at the comment and at that time did not discipline Quisenberry for the inappropriate comment.

30.     After returning from the emergency call, Booth and Brown both complained to Captain Bodden about Quisenberry's inappropriate comment. Booth reminded Captain Bodden that he was Hispanic and found the comment to be offensive and inappropriate.

31.     In response, Captain Bodden defended Quisenberry's comment and said that she was probably just having a bad day and refused to issue any kind of disciplinary action to Quisenberry.

32.     On or about June 2, 2007, Brown was "riding up" as Captain. Booth informed Brown that he and Firefighter/Paramedic Joshua Vitori were going to Publix to get lunch. Booth did not inform Captain Bodden that he was leaving, because on numerous prior occasions, Captain Bodden insisted that when Brown was riding up, Brown was Captain and in charge.

33.     Meanwhile, Captain Bodden arrived at Publix and saw Rescue 14 truck allegedly parked too close to the store, even though the truck was there early in the morning, when other businesses were not yet open. The truck was not blocking the flow of traffic and the truck had plenty of space to depart, if necessary.

34.     While in Publix, Captain Bodden in a furious rage approached Booth, got within inches of Booth's face and in the presence of not only co-workers but also Publix employees and citizens, Captain Bodden screamed and yelled at Booth, inquiring why he parked so close to Publix. Other Pasco County Fire Rescue employees were in the store and heard the commotion nearly three aisles over from where Captain Bodden was yelling at Booth.

35.     Captain Bodden continued to berate Booth and told him that he left the station without permission, without finishing his duties and without attending the morning meeting.

36.     However, a meeting was not held that morning, and management had specifically instructed Booth and Vitori not to complete their mopping duties because of the weather.

37.     Repeatedly, Booth requested that Captain Bodden address this issue back at the station and said, "This is not the place for this." However, Captain Bodden continued to yell and scream at Booth in Publix and refused to address it at the station.

38.      On this same day, Captain Bodden made a racial comment about loving a T-Shirt that said, "100% cotton and your mamma picked it." Booth found the comment to be highly offensive and discriminatory.

39.     Early in his shift on June 2, 2007, Booth was out on a call and realized that his truck was out of needle-less hubs. When Booth reached a hospital, Booth asked a nurse if he could have a few needle-less hubs to hold them over until they got to a station. The nurse gave Booth the needle-less hubs. Later that shift, Captain Bodden saw Booth using one of the hospital's needle-less hubs and despite Booth's attempts to explain the situation accused Booth of stealing the hubs from the hospital. Captain Bodden then verbally reprimanded Booth for allegedly stealing the hubs without similarly reprimanding Booth's Caucasian partner.

40.     On the morning of June 11, 2007, as Booth was completing his overtime shift, Captain Bodden harassed Booth about not being in uniform when he was checking in his truck. However, Captain Bodden did not similarly require a Caucasian firefighter to be in uniform. In fact, Captain Bodden, himself, was not in uniform when he demanded that Booth be in uniform.

41.     Later that shift, Captain Bodden instructed Booth to take an EMT refresher test. Booth told Captain Bodden that he had already completed the test on his shift on the prior evening. Captain Bodden accused Booth of allegedly cheating on the EMT refresher test. From that point forward, Captain Bodden required Booth to take all tests in his presence, while other Caucasian employees were not similarly required to take exams in the presence of Captain Bodden.

42.     After the refresher test incident, Captain Bodden then told Driver/Engineer Knarich that Booth was not on an engine because he was being disciplined. However, Captain Bodden never made Booth aware what he was being disciplined for, let alone that he was being disciplined at all.

43.     During this same shift, Captain Bodden attempted to force Booth to sign a written reprimand for the needle-less hub incident, even though he had already been verbally

reprimanded for same. Booth told Captain Bodden that he would not sign it and requested union representation. Captain Bodden became enraged, lost his temper and told Booth to "get out of the office."

44.     Captain Bodden proceeded to contact Battalion Chief ("BC") John Himmel and informed him that Booth refused to sign the written reprimand. Immediately after learning this, BC Himmel contacted Booth and demanded that he follow orders given by his superiors, in essence requiring Booth to sign the written reprimand even though he had already been verbally reprimanded.

45.     The conduct experienced by Booth was subjectively and objectively discriminatory and created a hostile working environment.

46.     On June 14, 2007, Booth reported and objected to the discriminatory conduct to Pasco County by filing a grievance alleging discrimination, hostile work environment and harassment as a result of Captain Bodden's behavior.

47.     After Booth complained about, objected to and opposed Pasco County's discriminatory behavior, BC Himmel retaliated against Booth by immediately transferring him to Station 11.

48.     In his complaints about the discrimination, harassment and hostile working environment, Booth identified Brown as a witness to Captain Bodden's discriminatory and harassing treatment.

49.     On June 15, 2007, Acting Assistant Chief Ciccarello and BC Himmel met to discuss Booth's complaint. They determined that Booth had a legitimate complaint against Captain Bodden, and Acting Assistant Chief Ciccarello allegedly instructed BC Himmel to speak with Captain Bodden about the discriminatory treatment.

50.     On June 17, 2007, BC Himmel met with Booth to discuss his discrimination complaints and admitted that Captain Bodden's behavior was improper and apologized. Booth told BC Himmel that he wanted to return to Station 14 so he would not lose his bid assignment. BC Himmel told Booth that it was probably better for him to just move on to advance his career, meaning shut up and do not make waves and just let it go.

51.     On this same day, BC Himmel claimed he met with Captain Bodden to discuss his behavior and informed Captain Bodden that a hostile working environment will not be tolerated. However, at that time, Pasco County did not discipline Captain Bodden.

52.     Just a few days after Booth filed his grievance complaining about discrimination, Captain Bodden suddenly reported Quisenberry's racial comment from May 2007 to BC Himmel, which resulted in a verbal counseling to Quisenberry on June 20, 2007.

53.     On or about June 20, 2007, Pasco County denied Booth's grievance. In fact, Acting Assistant Chief Ciccarello instructed BC Himmel to deny the grievance and indicated that he would do the same if it was elevated to Step 2.   By instructing BC Himmel to deny Booth's grievance, Acting Assistant Chief Ciccarello ratified Captain Bodden's and others' discriminatory and retaliatory actions against Booth.

54.     After Booth filed his grievance, he contacted the Union for assistance. However, the Union did not assist him with his grievance to Pasco County.

55.     On or about June 23, 2007, Booth elevated his grievance to Step 2.

56.     On or about June 27, 2007, Acting Assistant Chief Ciccarello told Booth that his allegations were supposedly being investigated.

57.     On or about June 29, 2007, Pasco County held a fact-finding hearing with Captain Bodden and BC Himmel regarding Booth's allegations. In the fact-finding hearing, Captain

Bodden admitted that his behavior was inappropriate but tried to place the blame on Booth by claiming that Booth was difficult to work with, did not follow orders and was often argumentative.

58.     Significantly, Booth's personnel files are devoid of any such performance issues.

59.     Despite Booth's complaints, the hostile working environment and discrimination continued.

60.     After Booth named Brown as a witness to the discriminatory events, Brown started to experience a retaliatory and hostile working environment.

61.     Despite Brown making Captain Bodden aware that his wife's family is Jewish, Captain Bodden made numerous anti-Semitic comments in the presence of Brown.

62.     For example, when Captain Bodden explained a story to his co-workers about his experience buying a car, he emphasized that he had to "Jew the guy down."

63.     On another occasion, while in Publix, Captain Bodden told another employee in the presence of Brown, "Don't be such a Jew."

64.     Brown told Captain Bodden on numerous occasions that he found his comments offensive.

65.     On July 5, 2007, Captain Bodden made a comment to Brown that the station is no longer Station 14, it is "Stalag 14".[2] Brown asked Captain Bodden what he meant by that, but Captain Bodden refused to answer and walked away. Offended by the comment, Brown told Captain Bodden "This is not a Nazi prison camp."

---

[2] Merriam-Webster's online dictionary defines Stalag as a German prison camp for noncommissioned officers or enlisted men.

66.     Later that same day, Brown again approached Captain Bodden to inquire about his "Stalag" comment. Captain Bodden informed Brown that he saw Brown's name on Booth's discrimination complaint and accused Brown of being out to get him.

67.     On July 6, 2007, Captain Bodden told Acting BC II Rick Caranova that he had gotten rid of Booth, referring to Booth's transfer to Station 11, and that Driver/Engineer David Miller and Brown were next.

68.     Acting BC II Caranova communicated to Brown Captain Bodden's threat to transfer and get rid of him.

69.     On July 11, 2007, Brown filed grievances with Pasco County against Captain Bodden for his anti-Semitic comments, for creating a hostile working environment and for Captain Bodden's threats to transfer Brown out of the station.

70.     On or about July 17, 2007, Acting Assistant Chief Ciccarello wrote and signed his response to Brown's grievances and effectively ratified the discriminatory and retaliatory actions of Captain Bodden and others against Brown by not taking any corrective action.

71.     Brown attempted to contact the Union to assist him in filing his grievance with Pasco County but the Union refused to assist him.

72.     By contrast, the Union had previously assisted other dues-paying members with filing grievances with Pasco County who did not complain of discrimination.

73.     On July 20, 2007, Booth elevated his discrimination and harassment grievance to Step 3 after no resolution from Pasco County and/or the Union.

74.     After Booth filed his complaints with the Union about Captain Bodden's behavior, Captain/Engineer Darren Pasquino told Captain Bodden to join the Union so that Booth could not also try to get him for "union busting."

75.     Not coincidentally, Captain Bodden became a dues-paying member of the Union in or around August 2007.

76.     On August 10, 2007, Director Anthony Lopinto received Booth's Step 3 grievance and informed Booth that the issues were still being investigated and that there was a delay in the disciplinary hearing for Captain Bodden so that he could get union representation and because of Captain Bodden's vacation.

77.     At this point, Booth's and Brown's grievances and complaints of discrimination were still outstanding, and Pasco County continued to delay the investigation into Booth's and Brown's claims.

78.     On August 25, 2007, just two months after Booth's complaints about discrimination, BC Himmel retaliated against Booth by giving Booth lower ratings from five to four in his ability to get along with others and his co-workers on his performance evaluation without justification. Prior to Booth's complaints, Pasco County never rated him a four in this area.  Acting Assistant Chief Ciccarello signed and approved Booth's performance evaluation, ratifying BC Himmel's retaliatory ratings.

79.     On August 31, 2007, Pasco County gave Captain Bodden notice of a September 12, 2007 administrative hearing on Booth's complaints. However, Pasco County continued to delay the hearing, which did not take place on September 12, 2007.

80.     Significantly, Pasco County never did a fact-finding on Brown's grievances.

81.     Sometime in October or November of 2007, Pasco County finally held a disciplinary hearing for Captain Bodden in which the Union represented him.

82.     Pasco County continued to claim that it was investigating Booth's and Brown's grievances regarding Captain Bodden's behavior. However, Pasco County's investigations of

Booth's and Brown's discrimination complaints were inadequate and done only to create a paper trail of an "investigation."

83.     For example, in October 2007, Pasco County took statements of employees regarding Booth's and Brown's complaints. However, Pasco County did not interview the requisite individuals at Station 14. Instead, Pasco County interviewed the current employees that Captain Bodden worked with at other stations and/or employees that did not work at Station 14 on a regular basis.

84.     In or around October 2007, Booth contacted union steward Kenneth Urbuteit to complain that Pasco County failed to timely respond to his grievance and to seek assistance from the Union, similar to the assistance provided to Captain Bodden. However, the Union took no action to correct the issues.

85.     The Union later claimed that because there was no collective bargaining agreement in place at the time, the Union was unable to assist any union members with regard to their grievances with Pasco County, let alone Booth and Brown, despite the fact that the Union had in fact assisted other union members in their grievances against Pasco County.

86.     On November 5, 2007, Pasco County found Captain Bodden's behavior to be in violation of the County's policies and indicated that it would take disciplinary action against Captain Bodden.

87.     Just three days after the disposition on Captain Bodden's disciplinary hearing became public, Pasco County continued to retaliate against Booth and Brown when Acting Assistant Chief Ciccarello changed their shift assignments effective November 11, 2007. The changes in shift assignments were announced in an interoffice memorandum dated November 8, 2007 from Acting Assistant Chief Ciccarello to a distribution list that included Director Lopinto,

Personnel Director Barbara DeSimone, Personnel Chief Cynthia Holland, and the Department's Battalion Chiefs. Director Lopinto failed to remedy the retaliatory shift changes, thereby ratifying the retaliation.

88. For example, Pasco County transferred Booth to an assignment doing rescue, which is considered punishment within Pasco County's fire department.

89. On November 20, 2007, Brown filed another grievance against Pasco County for continued discrimination and retaliation when he was transferred.

90. In response to Brown's grievance, Pasco County informed Brown that his grievance was not grievable because administration had the right to assign personnel as needed and that no retaliatory actions were taken.

91. On December 30, 2007, Brown awoke with a tooth ache. Brown attempted to find someone to work his overtime shift that day for him but was unable to find someone to work. Since he could not find anyone to work in his place, Captain Darrell Ryals excused him from working the overtime shift due to his illness.

92. The retaliatory treatment continued when, on January 10, 2008, Pasco County wrote Brown up for leaving the station and not working his overtime shift on December 30, 2007. However, Pasco County did not similarly discipline a similarly situated Captain, who did not engage in protected activity, for not working his overtime shift when his wife was ill.

93. The disciplinary actions taken by Pasco County against Booth and Brown are inconsistent with and more severe than the disciplinary action(s) it took against Caucasian and/or non-Venezuelan/Spaniard co-workers who did not complain about discrimination for the same or similar conduct.

94. In March 2008, Brown's sister died.

95.     On March 25, 2008, after learning that some vacation day slots for March 28, 2008 came available, Brown contacted BC Himmel to request vacation time for March 28, 2008 for his sister's death.

96.     BC Himmel denied Brown's vacation request, claiming that all available slots for vacation were full for that day. However, after BC Himmel denied Brown's vacation request, Brown learned that BC Himmel granted vacation time for March 28, 2008 to Firefighter/EMT Justin Behnke, who was less senior to Brown and had not similarly engaged in protected activity.

97.     Since BC Himmel denied Brown's vacation request, Brown had no choice but to report to work on March 28, 2008.

98.     On April 11, 2008, Booth filed charges of discrimination and retaliation with the EEOC against Pasco County for the racial comments, harassment, the unwarranted transfer out of his unit and other retaliatory actions. Booth also filed a charge of discrimination against the Union for treating Captain Bodden, Causcasian and other similarly situated union members more favorably than Booth with regard to grievances and disciplinary action.

99.     On April 11, 2008, Brown also filed charges of discrimination and retaliation with the EEOC against Pasco County for the discriminatory and harassing environment, including Captain Bodden's anti-Semitic comments, the unwarranted discipline for being ill and the denial of vacation to tend to personal family matters when his sister died. That same day, Brown also filed a charge of discrimination against the Union for treating Captain Bodden and other similarly situated union members more favorably than Brown with regard to grievances and disciplinary action.

100.     In or around April 2008, after Booth and Brown filed their initial charges of discrimination with the EEOC and FCHR, the Union disseminated an update on legal issues to

Pasco County and its union members, which included a reference to the Booth/Brown discrimination and retaliation charges. Specifically, the memo stated as follows:

> "Local 4420 members Jerry Brown and Anthony Booth have filed a charge claiming unspecified discrimination with the Equal Employment Opportunity Commission against the Union and the County. The Executive Board and our attorney feel it is a frivolous claim with no grounds for support and we are extremely confident in winning but will still have to defend the charges. This could be very costly and generate a legal bill of $10,000 or more. If it becomes too costly the Union may have to assess its members with additional fees to offset the cost. We will update you as it progresses."

101.    The Union intentionally included Booth's and Brown's name in the memo along with stating that their claims were frivolous and that the cost of defense may be passed on to the Unions members in order to anger and provoke the dues-paying members to position themselves against Booth and Brown and participate in the retaliation against them.

102.    The Union's memo was later posted on bulletin boards in several fire stations in Pasco County and sometime later was posted in the Union building for all to see. In addition, the Union President forwarded the memo to Director Lopinto, who also forwarded the Union's memo to several Pasco County emergency services employees and management at every fire station, thereby ratifying and the retaliatory actions by Captain Bodden and others and engaging in the retaliation himself.

103.    After the Union's memo was posted and disseminated, Booth and Brown experienced additional harassment by their co-workers, who were also dues-paying union members, in retaliation for their protected activity.

104.    For example, after the memo was posted, Booth's and Brown's co-workers refused to swap shifts with them, causing Booth and Brown to use their vacation time, even though their co-workers routinely did so prior to their protected activity.

105.    In addition, Pasco County denied overtime shifts to Booth and Brown and awarded overtime shifts to those who had not engaged in protected activity.

106.    On or about May 24, 2008, someone placed a sticker titled "Department Asshole" on Brown's locker. Brown immediately reported the incident to his Captain. After a picture was taken of the sticker, Brown removed the sticker and placed it inside his locker. Later that day, when Brown returned from a call, he noticed that someone had stolen the sticker from his locker. Brown reported this to his Captain.

107.    Despite Brown's complaints about the sticker, Pasco County failed to investigate the matter.

108.    Sometime after the memo was posted, Firefighter Shawn Peters, another union member, made a comment to Captain Whited and FF/EMT Brian Serio that "Someone needs to shut his f---ing mouth, before our dues go up," referring to union members having to pay higher dues because of Brown's and Booth's protected activity.

109.    After learning about the comment, Brown reported it to BC Himmel. However, neither BC Himmel nor Pasco County did anything about Peters' comment.

110.    On May 27, 2008, just a month after Brown filed his charge of retaliation with the EEOC and/or FCHR, BC Himmel continued to retaliate against Brown by giving him a lower rating from a five to a four in his ability to get along with others and his co-workers on his performance evaluation without justification. Prior to engaging in protected activity, Pasco County did not rate him that low in this area. Acting Assistant Chief Ciccarello signed and approved Brown's performance evaluation, ratifying BC Himmel's retaliatory ratings.

111.    As further retaliation for engaging in protected activity, in early 2008, Pasco County passed over Booth for promotion, despite his qualifications.  Booth was eighth on the

driver/engineer promotion list and Pasco County specifically chose to only promote six individuals in an effort to avoid promoting Booth to driver/engineer. Moreover, Pasco County has made it clear to Booth and Brown that they would not be promoted in the future.

112. On or about October 16, 2008, Booth filed another charge with the EEOC against Pasco County for retaliation when it distributed the Union's memo resulting in further harassment and retaliation by his co-workers. This same day, Booth also filed another charge with the EEOC against the Union for creating the memo, distributing it to the union members and Pasco County and the resulting retaliation and harassment by his co-workers.

113. On or about October 28, 2008, Brown filed another charge with the EEOC against Pasco County for retaliation when it distributed the Union's memo resulting in further harassment and retaliation by his fellow dues-paying members. This same day, Brown also filed another charge with the EEOC against the Union for creating the memo, distributing it to the union members and Pasco County and the resulting retaliation and harassment by his fellow dues-paying members.

114. Pasco County's retaliatory actions, including without limitation creating a hostile working environment for Plaintiffs, disciplining, transferring and giving lower performance ratings to Booth and Brown, are causally connected to Booth's and Brown's complaints about, objections to and opposition of the discriminatory and retaliatory treatment and to their EEOC and/or FCHR filings.

115. The Union's retaliatory actions, including posting the memo specifically identifying Booth's and Brown's claims of discrimination, are causally connected to Booth's and Brown's complaints about, objections to and opposition of the discriminatory and retaliatory treatment and to their EEOC and/or FCHR filings.

116.     Pasco County's stated reasons for the adverse actions against Booth and Brown are pretext for discrimination and retaliation.

117.     The Union's stated reasons for the adverse actions against Booth and Brown are pretext for discrimination and retaliation.

118.     As a result of the foregoing actions, Booth and Brown have suffered lost wages and benefits, loss of enjoyment of life, humiliation, mental anguish and emotional distress, and will continue to suffer these damages in the future. In addition, Booth and Brown had to retain the undersigned law firm to which they are obligated to pay reasonable attorneys' fees, costs and expenses.

119.     The actions alleged above have caused, and continue to cause, irreparable harm to Booth and Brown, for which there is no full, complete or adequate remedy at law.

120.     The intentional conduct of the Union and its agents of posting the memo to inflame the union members to position themselves against Booth and Brown was so willful and wanton, intentional, and/or malicious and in such reckless disregard of the statutory rights of Booth and Brown as to entitle each to an award of exemplary damages to punish the Union and to deter them and others from such conduct in the future.

**Count I**
**Disparate Treatment - Race Discrimination in Violation of the FCRA**
**Against Pasco County**
**(Booth Charge 1)**

121.     Booth restates and incorporates herein the allegations in paragraphs numbered  1, 2, 4, 6 – 11, 12(a), 12 (e), 13, and 18 – 120 above.

122.     Booth's race discrimination claims are encompassed in Booth Charge 1 as identified in this Amended Complaint, are like or related to the allegations contained in said charge and grew out of such allegations during the pendency of the case before the EEOC.

123.    Booth is a member of a protected class in that his race is Hispanic.

124.    Booth's race was a motivating factor for the foregoing adverse actions, including the unwarranted discipline, unfair transfers and lower performance ratings and negatively affected the terms, conditions and privileges of Booth's employment in violation of the FCRA.

125.    Pasco County subjected Booth to disparate treatment based upon his race in violation of the FCRA.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against Pasco County:

A.      Declaring Pasco County's actions to be unlawful employment practices in violation of the FCRA;

B.      Awarding Booth his lost wages and benefits including interest thereon;

C.      Awarding instatement to the appropriate promotional position, or in the alternative, front pay;

D.      Permanently enjoining Pasco County from future violations of the FCRA;

E.      Awarding Booth compensatory damages;

F.      Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.      Awarding such other relief as the Court deems just and appropriate.

**<u>Count II</u>**
**Disparate Treatment - Race Discrimination in Violation of the FCRA**
**Against the Union**
**(Booth Charge 2)**

126.    Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 5 – 11, 12(b), 12(f), 13, and 15 – 120 above.

127.    Booth's race discrimination claims are encompassed in Booth Charge 2 as identified in this Amended Complaint, are like or related to the allegations contained in said charge and grew out of such allegations during the pendency of the case before the EEOC.

128.    Booth is a member of a protected class in that his race is Hispanic.

129.    Booth's race was a motivating factor for the foregoing adverse actions, refusing to assist with grievances, publishing false information to union members and others to incite them against him and negatively affected the terms, conditions and privileges of Booth's employment with Pasco County in violation of the FCRA.

130.    The Union subjected Booth to disparate treatment based upon his race in violation of the FCRA while treating other similarly situated union members, including Captain Bodden, more favorably.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against the Union:

A.    Declaring the Union's actions to be unlawful employment practices in violation of the FCRA;

B.    Awarding Booth his lost wages and benefits including interest thereon;

C.    Permanently enjoining the Union from future violations of the FCRA;

D.    Awarding Booth compensatory damages and punitive damages;

E.    Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

F.    Awarding such other relief as the Court deems just and appropriate.

**Count III**
**Harassment - Race Discrimination in Violation of the FCRA**
**Against Pasco County**
**(Booth Charge 1)**

131.     Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 4, 6 – 11, 12(a), 12 (e), 13, and 18 – 120 above.

132.     Booth's race discrimination claims encompassed in Booth Charge 1 as identified in this Amended Complaint, are like or related to the allegations contained in said charge and grew out of such allegations during the pendency of the case before the EEOC.

133.     Booth is a member of a protected class in that his race is Hispanic.

134.     Pasco County subjected Booth to offensive and unwelcome comments, harassment and adverse actions, because of his race.

135.     The racial harassment and/or discrimination against Booth culminated in a hostile working environment.

136.     Booth suffered adverse employment actions, including but not limited to unfair performance ratings, unwarranted disciplinary action, involuntary transfers and economic loss.

137.     Pasco County knew or should have known of the harassment and/or discrimination but failed to take appropriate remedial action.

138.     Pasco County acted negligently, recklessly and/or maliciously in failing to prevent the above-referenced unlawful employment practices and/or failing to investigate promptly and/or failing to take prompt remedial action to stop the harassment and/or discrimination.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against Pasco County:

A.     Declaring Pasco County's actions to be unlawful employment practices in violation of the FCRA;

B.     Awarding Booth his lost wages and benefits including interest thereon;

C.  Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D.  Permanently enjoining Pasco County from future violations of the FCRA;

E.  Awarding Booth compensatory damages;

F.  Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.  Awarding such other relief as the Court deems just and appropriate.

**Count IV**
**Disparate Treatment - Race Discrimination in Violation of Title VII**
**Against Pasco County**
**(Booth Charge 1)**

139.   Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 4, 6 – 11, 12(a), 12 (e), 13, and 18 – 120 above.

140.   Booth's race discrimination claims encompassed in Booth Charge 1 as identified in this Amended Complaint, are like or related to the allegations contained in said charge and grew out of such allegations during the pendency of the case before the EEOC.

141.   Booth is a member of a protected class in that his race is Hispanic.

142.   Booth's race was a motivating factor for the foregoing adverse actions, including unwarranted discipline, unfair transfers and lower performance ratings and negatively affected the terms, conditions and privileges of Booth's employment in violation of Title VII.

143.   Pasco County subjected Booth to disparate treatment based upon his race in violation of Title VII.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against Pasco County:

A.   Declaring Pasco County's actions to be unlawful employment practices in violation of Title VII;

B.   Awarding Booth his lost wages and benefits including interest thereon;

C.   Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D.   Permanently enjoining Pasco County from future violations of Title VII;

E.   Awarding Booth compensatory damages;

F.   Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.   Awarding such other relief as the Court deems just and appropriate.

<u>Count V</u>
**Disparate Treatment - Race Discrimination in Violation of Title VII**
**Against the Union**
**(Booth Charge 2)**

144.   Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 5 – 11, 12(b), 12(f), 13, and 15 – 120 above.

145.   Booth's race discrimination claims encompassed in Booth Charge 2 as identified in this Amended Complaint, are like or related to the allegations contained in said charge and grew out of such allegations during the pendency of the case before the EEOC.

146.   Booth is a member of a protected class in that his race is Hispanic.

147.   Booth's race was a motivating factor for the foregoing adverse actions, refusing to assist with grievances, publishing false information to union members and others to incite them against him, and negatively affected the terms, conditions and privileges of Booth's employment with Pasco County in violation of the FCRA.

148. The Union subjected Booth to disparate treatment based upon his race in violation of the FCRA while treating other similarly situated union members, including Captain Bodden, more favorably.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against the Union:

A. Declaring the Union's actions to be unlawful employment practices in violation of Title VII;

B. Awarding Booth his lost wages and benefits including interest thereon;

C. Permanently enjoining the Union from future violations of Title VII;

D. Awarding Booth compensatory damages and punitive damages;

E. Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

F. Awarding such other relief as the Court deems just and appropriate.

**Count VI**
**Harassment (Race) in Violation of Title VII**
**Against Pasco County**
**(Booth Charge 1)**

149. Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 4, 6 – 11, 12(a), 12 (e), 13, and 18 – 120 above.

150. Booth's race discrimination claims encompassed in Booth Charge 1 as identified in this Amended Complaint, are like or related to the allegations contained in said charge and grew out of such allegations during the pendency of the case before the EEOC.

151. Booth is a member of a protected class in that his race is Hispanic.

152. Pasco County subjected Booth to offensive and unwelcome comments, harassment and adverse actions because of his race.

Booth and Brown Amended Complaint

153.     The racial harassment and/or discrimination against Booth culminated in a hostile work environment.

154.     Booth suffered adverse employment actions, including but not limited to unfair performance ratings, unwarranted disciplinary action, involuntary transfers and economic loss.

155.     Pasco County knew or should have known of the harassment and/or discrimination but failed to take appropriate remedial action.

156.     Pasco County acted negligently, recklessly and/or maliciously in failing to prevent the above-referenced unlawful employment practices and/or failing to investigate promptly and/or failing to take prompt remedial action to stop the harassment and/or discrimination.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against Pasco County:

A.     Declaring Pasco County's actions to be unlawful employment practices in violation of Title VII;

B.     Awarding Booth his lost wages and benefits including interest thereon;

C.     Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D.     Permanently enjoining Pasco County from future violations of Title VII;

E.     Awarding Booth compensatory damages;

F.     Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.     Awarding such other relief as the Court deems just and appropriate.

**<u>Count VII</u>**
**Disparate Treatment - Race/Alienage Discrimination**

**in Violation of §1981 brought via §1983**
**Against Pasco County**

157.     Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 4, 6 – 11, 12(a), 12 (e), 13, and 18 – 120 above.

158.     It is well established that there is a federal right to be free from intentional racial and/or alienage discrimination in public employment.

159.     At all material times, Pasco County was a "person" within the meaning of §1983.

160.     At all material times, Pasco County was acting under color of state law within the meaning of §1983.

161.     Booth's race and/or alienage was a motivating factor for the foregoing adverse actions, including discriminatory comments, unwarranted discipline, unfair transfers, and lower performance ratings, and negatively affected the terms, conditions and privileges of Booth's employment in violation of §1981.

162.     Pasco County purposefully and intentionally subjected Booth to disparate treatment based upon his race and/or alienage in violation §1981.

163.     Pasco County's conduct deprived Booth of the rights, privileges and immunities guaranteed him under the Constitution or laws of the United States within the meaning of §1983, including his right not to be discriminated against based upon his race and/or alienage, as guaranteed by §1981.

164.     The foregoing actions were purposeful and arose from an official policy or custom or were ratified by Pasco County policymakers with final decision making authority.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against Pasco County:

A.      Declaring Pasco County's actions to be unlawful employment practices in violation of §1981;

B.      Awarding Booth his lost wages and benefits including interest thereon;

C.      Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D.      Permanently enjoining Pasco County from future violations of §1981;

E.      Awarding Booth compensatory damages;

F.      Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to 42 U.S.C. §1988; and

G.      Awarding such other relief as the Court deems just and appropriate.

**Count VIII**
**Harassment (Race/Alienage) in Violation of §1981 brought via §1983**
**Against Pasco County**

165.    Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 4, 6 – 11, 12(a), 12 (e), 13, and 18 – 120 above.

166.    It is well established that there is a federal right to be free from intentional racial and/or alienage discrimination in public employment.

167.    At all material times, Pasco County knew or should have known it was illegal to discriminate against individuals with regard to the terms, conditions and privileges of their employment because of their race and/or alienage.

168.    At all material times, Pasco County was a "person" within the meaning of §1983.

169.    At all material times, Pasco County was acting under color of state law within the meaning of §1983.

170.    Pasco County purposefully and intentionally subjected Booth to offensive and unwelcome comments, harassment and adverse actions based upon his race and/or alienage.

171.    The racial and/or alienage harassment and/or discrimination against Booth culminated in a hostile work environment.

172.    Booth suffered adverse employment actions, including but not limited to unfair performance ratings, involuntary/unfair transfers, unwarranted disciplinary action and economic loss.

173.    Pasco County knew or should have known of the harassment and/or discrimination but failed to take appropriate remedial action.

174.    Pasco County acted intentionally, purposefully, maliciously, and/or with reckless indifference to Booth's federally protected rights in failing to prevent racial discrimination and/or failing to take prompt remedial action to stop the harassment and/or discrimination against Booth.

175.    Pasco County acted intentionally, purposefully, maliciously and/or with reckless indifference to Booth's federally protected rights by giving him unfair performance ratings, unfairly disciplining him, transferring him and adversely affecting his employment benefits based on his race in violation of §1981.

176.    Pasco County's conduct deprived Booth of the rights, privileges and immunities guaranteed under the Constitution or laws of the United States within the meaning of §1983, including his right not to be discriminated against based upon his race and/or alienage, as guaranteed by §1981.

177.    The foregoing actions were purposeful and arose from an official policy or custom or were ratified by Pasco County policymakers with final decision making authority.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against Pasco County:

A.    Declaring Pasco County's actions to be unlawful employment practices in violation of §1981;

B.    Awarding Booth his lost wages and benefits including interest thereon;

C.    Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D.    Permanently enjoining Pasco County from future violations of §1981;

E.    Awarding Booth compensatory damages;

F.    Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to 42 U.S.C. §1988; and

G.    Awarding such other relief as the Court deems just and appropriate.

### Count IX
**Disparate Treatment - National Origin Discrimination in Violation of the FCRA
Against Pasco County
(Booth Charge 1)**

178.    Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 4, 6 – 11, 12(a), 12 (e), 13, and 18 – 120 above.

179.    Booth is a member of a protected class in that his national origin is Venezuelan and Spaniard.

180.    Booth's national origin was a motivating factor for the foregoing adverse actions, including discriminatory comments, unwarranted discipline, unfair transfers and lower performance ratings and negatively affected the terms, conditions and privileges of Booth's employment in violation of the FCRA.

181.    Pasco County subjected Booth to disparate treatment based upon his national origin in violation of the FCRA.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against Pasco County:

A.    Declaring Pasco County's actions to be unlawful employment practices in violation of the FCRA;

B.    Awarding Booth his lost wages and benefits including interest thereon;

C.    Awarding instatement to the appropriate promotional position, or in the alternative front pay;

D.    Permanently enjoining Pasco County from future violations of the FCRA;

E.    Awarding Booth compensatory damages;

F.    Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.    Awarding such other relief as the Court deems just and appropriate.

### Count X
### Disparate Treatment - National Origin Discrimination in Violation of the FCRA
### Against the Union
### (Booth Charge 2)

182.    Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 5 – 11, 12(b), 12(f), 13, and 15 – 120 above.

183.    Booth is a member of a protected class in that his national origin is Venezuelan and Spaniard.

184.    Booth's race was a motivating factor for the foregoing adverse actions, including refusing to assist with grievances, publishing false information to union members and others to

incite them against him, and negatively affected the terms, conditions and privileges of Booth's

employment with Pasco County in violation of the FCRA.

185.     The Union subjected Booth to disparate treatment based upon his race in violation

of the FCRA while treating other similarly situated union members, including Captain Bodden,

more favorably.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and

against the Union:

A.     Declaring the Union's actions to be unlawful employment practices in violation of

the FCRA;

B.     Awarding Booth his lost wages and benefits including interest thereon;

C.     Permanently enjoining the Union from future violations of the FCRA;

D.     Awarding Booth compensatory damages and punitive damages;

E.     Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in

this matter; and

F.     Awarding such other relief as the Court deems just and appropriate.

### Count XI
### Harassment (National Origin) in Violation of the FCRA
### Against Pasco County
### (Booth Charge 1)

186.     Booth restates and incorporates herein the allegations in paragraphs numbered 1,

2, 4, 6 – 11, 12(a), 12 (e), 13, and 18 – 120 above.

187.     Booth is a member of a protected class in that his national origin is Venezuelan

and Spaniard.

188.     Pasco County subjected Booth to offensive and unwelcome comments,

harassment and adverse actions because of his national origin.

189.    The harassment and/or discrimination against Booth culminated in a hostile working environment.

190.    Booth suffered adverse employment actions, including but not limited to unfair performance ratings, unwarranted disciplinary action, involuntary transfers and economic loss.

191.    Pasco County knew or should have known of the harassment and/or discrimination, but failed to take appropriate remedial action.

192.    Pasco County acted negligently, recklessly and/or maliciously in failing to prevent the above-referenced unlawful employment practices and/or failing to investigate promptly and/or failing to take prompt remedial action to stop the harassment and/or discrimination.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against Pasco County:

A.    Declaring Pasco County's actions to be unlawful employment practices in violation of the FCRA;

B.    Awarding Booth his lost wages and benefits including interest thereon;

C.    Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D.    Permanently enjoining Pasco County from future violations of the FCRA;

E.    Awarding Booth compensatory damages;

F.    Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.    Awarding such other relief as the Court deems just and appropriate.

## Count XII
### Disparate Treatment - National Origin Discrimination in Violation of Title VII

**Against Pasco County**
**(Booth Charge 1)**

193.     Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 4, 6 – 11, 12(a), 12 (e), 13, and 18 – 120 above.

194.     Booth is a member of a protected class in that his national origin is Venezuelan and Spaniard.

195.     Booth's national origin was a motivating factor for the foregoing adverse actions, including discriminatory comments, unwarranted discipline, unfair transfers and lower performance ratings and negatively affected the terms, conditions and privileges of Booth's employment in violation of Title VII.

196.     Pasco County subjected Booth to disparate treatment based upon his national origin in violation of Title VII.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against Pasco County:

A.     Declaring Pasco County's actions to be unlawful employment practices in violation of Title VII;

B.     Awarding Booth his lost wages and benefits including interest thereon;

C.     Awarding instatement to the appropriate promotional position, or in the alternative front pay;

D.     Permanently enjoining Pasco County from future violations of Title VII;

E.     Awarding Booth compensatory damages;

F.     Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.     Awarding such other relief as the Court deems just and appropriate.

## Count XIII
### Disparate Treatment - National Origin Discrimination in Violation of Title VII
### Against the Union
### (Booth Charge 2)

197.    Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 5 – 11, 12(b), 12(f), 13, and 15 – 120 above.

198.    Booth is a member of a protected class in that his national origin is Venezuelan and Spaniard.

199.    Booth's race was a motivating factor for the foregoing adverse actions, including refusing to assist with grievances, publishing false information to union members and others to incite them against him, and negatively affected the terms, conditions and privileges of Booth's employment with Pasco County in violation of the FCRA.

200.    The Union subjected Booth to disparate treatment based upon his race in violation of the FCRA while treating other similarly situated union members, including Captain Bodden, more favorably.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against the Union:

A.    Declaring the Union's actions to be unlawful employment practices in violation of Title VII;

B.    Awarding Booth his lost wages and benefits including interest thereon;

C.    Permanently enjoining the Union  from future violations of Title VII;

D.    Awarding Booth compensatory damages and punitive damages;

E.    Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

F.    Awarding such other relief as the Court deems just and appropriate.

<u>**Count XIV**</u>
**Harassment (National Origin) in Violation of Title VII**
**Against Pasco County**
**(Booth Charge 2)**

201.    Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 4, 6 – 11, 12(a), 12 (e), 13, and 18 – 120 above.

202.    Booth is a member of a protected class in that his national origin is Venezuelan and Spaniard.

203.    Pasco County subjected Booth to offensive and unwelcome comments, harassment and adverse actions, because of his national origin.

204.    The harassment and/or discrimination against Booth culminated in a hostile work environment.

205.    Booth suffered adverse employment actions, including but not limited to unfair performance ratings, unwarranted disciplinary action and economic loss.

206.    Pasco County knew or should have known of the harassment and/or discrimination, but failed to take appropriate remedial action.

207.    Pasco County acted negligently, recklessly and/or maliciously in failing to prevent the above-referenced unlawful employment practices and/or failing to investigate promptly and/or failing to take prompt remedial action to stop the harassment and/or discrimination.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against Pasco County:

A.    Declaring Pasco County's actions to be unlawful employment practices in violation of Title VII;

B.    Awarding Booth his lost wages and benefits including interest thereon;

C.      Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D.      Permanently enjoining Pasco County from future violations of Title VII;

E.      Awarding Booth compensatory damages;

F.      Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.      Awarding such other relief as the Court deems just and appropriate.

**<u>Count XV</u>**
**Retaliation in Violation of the FCRA Against Pasco County**
**(Booth Charges 1 and 3)**

208.    Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 4, 6 – 11, 12(a), 12 (e), 13, and 18 – 120 above.

209.    Booth opposed and complained of the unlawful employment practices described above and filed charges of discrimination with the EEOC and/or the FCHR, including race and national origin discrimination and retaliation.

210.    The foregoing adverse actions were taken because Booth opposed the unlawful discrimination and retaliation and/or filed charges of discrimination with the EEOC and/or the FCHR relating to the unlawful discrimination and retaliation, and negatively affected the terms, conditions and privileges of Booth's employment in violation of the FCRA.

211.    Pasco County's actions are likely to dissuade a reasonable worker from filing an EEOC Charge and/or complaining about, objecting to and/or opposing discriminatory treatment.

212.    Pasco County's actions caused Booth to suffer lost wages and benefits, loss of enjoyment of life, humiliation, mental anguish and emotional distress

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against Pasco County:

A.      Declaring Pasco County's actions to be an unlawful employment practice in violation of the FCRA;

B.      Awarding Booth his lost wages and benefits, including interest thereon;

C.      Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D.      Permanently enjoining Pasco County from future violations of the FCRA;

E.      Awarding Booth compensatory damages;

F.      Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.      Awarding such other relief as the Court deems just and appropriate.

**Count XVI**
**Retaliation in Violation of the FCRA**
**Against the Union**
**(Booth Charges 2 and 4)**

213.    Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 5 – 11, 12(b), 12(f), 13, and 15 – 120 above.

214.    Booth opposed and complained of the unlawful employment practices described above and filed charges of discrimination with the EEOC and/or the FCHR, including race and national origin discrimination and retaliation.

215.    The foregoing adverse actions were taken because Booth opposed the unlawful discrimination and retaliation and/or filed charges of discrimination with the EEOC and/or the FCHR relating to the unlawful discrimination and retaliation, and negatively affected the terms, conditions and privileges of Booth's employment in violation of the FCRA.

216.    The Union's actions are likely to dissuade a reasonable worker from filing an EEOC Charge and/or complaining about, objecting to and/or opposing discriminatory treatment.

217.    The Union's actions caused Booth to suffer lost wages and benefits, loss of enjoyment of life, humiliation, mental anguish and emotional distress

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against the Union:

A.    Declaring the Union's actions to be an unlawful employment practice in violation of the FCRA;

B.    Awarding Booth his lost wages and benefits, including interest thereon;

C.    Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D.    Permanently enjoining the Union from future violations of the FCRA;

E.    Awarding Booth compensatory damages and punitive damages;

F.    Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.    Awarding such other relief as the Court deems just and appropriate.

**Count XVII**
**Retaliation in Violation of Title VII[3]**
**Against Pasco County**
**(Booth Charge 1)**

218.    Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 4, 6 – 11, 12(a), 12 (e), 13, and 18 – 120 above.

---

[3] Booth reserves the right to amend his complaint once the EEOC issues a right to sue notice on Booth Charges 3 and 4.

219.    Booth opposed and complained of the unlawful employment practices described above and filed charges of discrimination with the EEOC and/or the FCHR, including race and national origin discrimination and retaliation.

220.    The foregoing adverse actions were taken because Booth opposed the unlawful discrimination and retaliation and/or filed charges of discrimination with the EEOC and/or the FCHR relating to the unlawful discrimination and retaliation, and negatively affected the terms, conditions and privileges of Booth's employment in violation of Title VII.

221.    Pasco County's actions are likely to dissuade a reasonable worker from filing an EEOC Charge and/or complaining about, objecting to and/or opposing discriminatory treatment.

222.    Pasco County's actions caused Booth to suffer lost wages and benefits, loss of enjoyment of life, humiliation, mental anguish and emotional distress

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against Pasco County:

A.    Declaring Pasco County's actions to be an unlawful employment practice in violation of Title VII;

B.    Awarding Booth his lost wages and benefits, including interest thereon;

C.    Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D.    Permanently enjoining Pasco County from future violations of Title VII;

E.    Awarding Booth compensatory damages;

F.    Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.    Awarding such other relief as the Court deems just and appropriate.

## Count XVIII
### Retaliation in Violation of §1981 brought via §1983
### Against Pasco County

223.    Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 4, 6 – 11, 12(a), 12 (e), 13, and 18 – 120 above.

224.    It has been established that there is a federal right to be free from retaliation for complaining about, objecting to and/or opposing racial and/or alienage discrimination. *CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951 (2008).

225.    At all material times, Pasco County knew or should have known that it was illegal to retaliate against individuals who complain about, object to and/or oppose racial and/or alienage discrimination with regard to the terms, conditions and privileges of their employment because of protected activity.

226.    At all material times, Pasco County was a "person" within the meaning of §1983.

227.    At all material times, Pasco County was acting under color of state law within the meaning of §1983.

228.    Booth opposed and complained of the unlawful employment practices described above regarding race and/or alienage (national origin) discrimination and retaliation.

229.    The foregoing adverse actions were taken because Booth opposed the unlawful discrimination and retaliation and negatively affected the terms, conditions and privileges of Booth's employment in violation of §1981.

230.    Pasco County's actions are likely to dissuade a reasonable worker from complaining about, objecting to and/or opposing discriminatory treatment.

231.    Pasco County purposefully and intentionally retaliated against Booth based upon his protected activities in violation of §1981.

232. Pasco County's conduct deprived Booth of the rights, privileges or immunities guaranteed him under the Constitution or laws of the United States within the meaning of §1983, including his right not to be retaliated against for complaining about, objecting to and/or opposing racial and/or alienage discrimination, as guaranteed by §1981.

233. The foregoing actions were purposeful and arose from an official policy or custom or were ratified by Pasco County policymakers with final decision making authority.

234. Pasco County's actions caused Booth to suffer lost wages and benefits, loss of enjoyment of life, humiliation, mental anguish and emotional distress

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against Pasco County:

A. Declaring Pasco County's actions to be an unlawful employment practice in violation of §1981;

B. Awarding Booth his lost wages and benefits, including interest thereon;

C. Awarding instatement to the appropriate promotional position, or in the alternative front pay;

D. Permanently enjoining Pasco County from future violations of §1981;

E. Awarding Booth compensatory damages;

F. Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G. Awarding such other relief as the Court deems just and appropriate.

## Count XIX
### Retaliation in Violation of §1981 Against the Union

235. Booth restates and incorporates herein the allegations in paragraphs numbered 1, 2, 5 – 11, 12(b), 12(f), 13, and 15 – 120 above.

236.     Booth opposed and complained of the unlawful employment practices described above regarding race discrimination.

237.     As a result of Booth engaging in these protected activities, the Union retaliated against Booth in violation of §1981 and adversely affected the terms, conditions and privileges of Booth's employment.

238.     The Union's actions are likely to dissuade a reasonable worker from complaining about, objecting to and/or opposing discriminatory treatment.

239.     The Union's actions caused Booth to suffer lost wages, emotional distress, humiliation, shame, loss of self-esteem and dignity, mortification, disgrace, embarrassment, loss of enjoyment of life, and mental anguish, and Booth will continue to suffer said damages in the future.

WHEREFORE, Booth requests that this Honorable Court enter judgment in his favor and against the Union:

A.     Declaring the Union's actions to be an unlawful employment practice in violation of §1981;

B.     Awarding Booth his lost wages and benefits, including interest thereon;

C.     Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D.     Permanently enjoining the Union from future violations of §1981;

E.     Awarding Booth compensatory damages and punitive damages;

F.     Awarding Booth the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to 42 U.S.C. §1988; and

G.     Awarding such other relief as the Court deems just and appropriate.

## Count XX
## Retaliation in Violation of FCRA Against Pasco County
## (Brown Charges 1 and 3)

240.    Brown restates and incorporates herein the allegations in paragraphs numbered 1, 3, 4, 6 – 11, 12(c), 12(g), 14, and 18 – 120 above.

241.    Brown opposed and complained of the unlawful employment practices described above and filed charges of discrimination with the EEOC and/or the FCHR, including religious discrimination and retaliation.

242.    The foregoing adverse actions were taken because Brown opposed the unlawful discrimination and retaliation and/or filed charges of discrimination with the EEOC and/or the FCHR relating to the unlawful discrimination and retaliation, and negatively affected the terms, conditions and privileges of Brown's employment in violation of the FCRA.

243.    Pasco County's actions are likely to dissuade a reasonable worker from filing an EEOC charge and/or complaining about, objecting to and/or opposing discriminatory treatment.

244.    Pasco County's actions caused Brown to suffer lost wages and benefits, loss of enjoyment of life, humiliation, mental anguish and emotional distress

WHEREFORE, Brown requests that this Honorable Court enter judgment in his favor and against Pasco County:

A.      Declaring Pasco County's actions to be an unlawful employment practice in violation of the FCRA;

B.      Awarding Brown his lost wages and benefits, including interest thereon;

C.      Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D.      Permanently enjoining Pasco County from future violations of the FCRA;

E.      Awarding Brown compensatory damages;

F.      Awarding Brown the reasonable attorneys' fees, costs and expenses incurred in

this matter; and

G.      Awarding such other relief as the Court deems just and appropriate.

## Count XXI
### Retaliation in Violation of FCRA Against the Union
### (Brown Charges 2 and 4)

245.    Brown restates and incorporates herein the allegations in paragraphs numbered 1,
3, 5 – 11, 12(d), 12(h), and 14 – 120 above.

246.    Brown opposed and complained of the unlawful employment practices described
above and filed charges of discrimination with the EEOC and/or the FCHR, including religious
discrimination and retaliation.

247.    The foregoing adverse actions were taken because Brown opposed the unlawful
discrimination and retaliation and/or filed charges of discrimination with the EEOC and/or the
FCHR relating to the unlawful discrimination and retaliation, and negatively affected the terms,
conditions and privileges of Brown's employment in violation of the FCRA.

248.    The Union's actions are likely to dissuade a reasonable worker from filing an
EEOC charge and/or complaining about, objecting to and/or opposing discriminatory treatment.

249.    The Union's actions caused Brown to suffer lost wages and benefits, loss of
enjoyment of life, humiliation, mental anguish and emotional distress

WHEREFORE, Brown requests that this Honorable Court enter judgment in his favor
and against the Union:

A.      Declaring the Union's actions to be an unlawful employment practice in violation
of the FCRA;

B.      Awarding Brown his lost wages and benefits, including interest thereon;

C.      Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D.      Permanently enjoining the Union from future violations of the FCRA;

E.      Awarding Brown compensatory damages and punitive damages;

F.      Awarding Brown the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.      Awarding such other relief as the Court deems just and appropriate.

## Count XXII
### Retaliation in Violation of Title VII[4] Against Pasco County
### (Brown Charge 1)

250.    Brown restates and incorporates herein the allegations in paragraphs numbered 1, 3, 4, 6 – 11, 12(c), 12(g), 14, and 18 – 120 above.

251.    Brown opposed and complained of the unlawful employment practices described above and filed charges of discrimination with the EEOC and/or the FCHR, including race and national origin discrimination and retaliation.

252.    The foregoing adverse actions were taken because Brown opposed the unlawful discrimination and retaliation and/or filed charges of discrimination with the EEOC and/or the FCHR relating to the unlawful discrimination and retaliation, and negatively affected the terms, conditions and privileges of Brown's employment in violation of Title VII.

253.    Pasco County's actions are likely to dissuade a reasonable worker from filing an EEOC Charge and/or complaining about, objecting to and/or opposing discriminatory treatment.

---

[4] Brown reserves the right to amend his complaint once the EEOC issues a right to sue notice on Brown Charges 3 and 4..

254. Pasco County's actions caused Brown to suffer lost wages and benefits, loss of enjoyment of life, humiliation, mental anguish and emotional distress

WHEREFORE, Brown requests that this Honorable Court enter judgment in his favor and against Pasco County:

A. Declaring Pasco County's actions to be an unlawful employment practice in violation of Title VII;

B. Awarding Brown his lost wages and benefits, including interest thereon;

C. Awarding instatement to the appropriate promotional position or, in the alternative, front pay;

D. Permanently enjoining Pasco County from future violations of Title VII;

E. Awarding Brown compensatory damages;

F. Awarding Brown the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G. Awarding such other relief as the Court deems just and appropriate.

<u>**Count XXIII**</u>
**Retaliation in Violation of §1981 Against Pasco County**

255. Brown restates and incorporates herein the allegations in paragraphs numbered 1, 3, 4, 6 – 11, 12(c), 12(g), 14, and 18 – 120 above.

256. It has been established that there is a federal right to be free from retaliation for complaining about, objecting to and/or opposing racial and/or alienage discrimination. *CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951 (2008).

257. At all material times, Pasco County knew or should have known that it was illegal to retaliate against individuals who complain about, object to and/or oppose racial and/or

alienage discrimination with regard to the terms, conditions and privileges of their employment because of protected activity.

258.    At all material times, Pasco County was a "person" within the meaning of §1983.

259.    At all material times, Pasco County was acting under color of state law within the meaning of §1983.

260.    Brown opposed and complained of the unlawful employment practices described above regarding race and/or alienage (national origin) discrimination and retaliation.

261.    The foregoing adverse actions were taken because Brown opposed the unlawful discrimination and retaliation and negatively affected the terms, conditions and privileges of Brown's employment in violation of §1981.

262.    Pasco County's actions are likely to dissuade a reasonable worker from complaining about, objecting to and/or opposing discriminatory treatment.

263.    Pasco County purposefully and intentionally retaliated against Brown based upon his protected activities in violation of §1981.

264.    Pasco County's conduct deprived Brown of the rights, privileges or immunities guaranteed him under the Constitution or laws of the United States within the meaning of §1983, including his right not to be retaliated against for complaining about, objecting to and/or opposing racial and/or alienage discrimination, as guaranteed by §1981.

265.    The foregoing actions were purposeful and arose from an official policy or custom or were ratified by Pasco County policymakers with final decision making authority.

266.    Pasco County's actions caused Brown to suffer lost wages and benefits, loss of enjoyment of life, humiliation, mental anguish and emotional distress

WHEREFORE, Brown requests that this Honorable Court enter judgment in his favor and against Defendants:

A.    Declaring Pasco County's actions to be an unlawful employment practice in violation of §1981;

B.    Awarding Brown his lost wages and benefits, including interest thereon;

C.    Awarding instatement to the appropriate promotional position, or in the alternative front pay;

D.    Permanently enjoining Pasco County from future violations of §1981;

E.    Awarding Brown compensatory damages;

F.    Awarding Brown the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to 42 U.S.C. §1988; and

G.    Awarding such other relief as the Court deems just and appropriate.

## <u>Count XXIV</u>
### <u>Retaliation in Violation of §1981 Against the Union</u>

267.    Brown restates and incorporates herein the allegations in paragraphs numbered 1, 3, 5 – 11, 12(d), 12(h), and 14 – 120 above.

268.    Brown opposed and complained of the unlawful employment practices described above regarding race discrimination.

269.    As a result of Brown engaging in these protected activities, the Union retaliated against Brown in violation of §1981 and adversely affected the terms, conditions and privileges of Brown's employment.

270.    The Union's actions are likely to dissuade a reasonable worker from complaining about, objecting to and/or opposing discriminatory treatment.

Booth and Brown Amended Complaint

271.   The Union's actions caused Brown to suffer lost wages, emotional distress, humiliation, shame, loss of self-esteem and dignity, mortification, disgrace, embarrassment, loss of enjoyment of life, and mental anguish, and Brown will continue to suffer said damages in the future.

WHEREFORE, Brown requests that this Honorable Court enter judgment in his favor and against the Union:

A.   Declaring the Union's actions to be an unlawful employment practice in violation of §1981;

B.   Awarding Brown his lost wages and benefits, including interest thereon;

C.   Permanently enjoining the Union from future violations of §1981;

D.   Awarding Brown compensatory damages and punitive damages;

E.   Awarding Brown the reasonable attorneys' fees, costs and expenses incurred in this matter pursuant to 42 U.S.C. §1988; and

F.   Awarding such other relief as the Court deems just and appropriate.

## Demand for Jury Trial

Plaintiffs demand a trial by jury on all issues so triable.

Dated:   April 23, 2010

Respectfully Submitted,

s/ Cynthia N. Sass

Cynthia N. Sass, Esquire
Florida Bar No. 0691320
Constantine W. Papas, Esquire
Florida Bar No. 89974
Law Offices of Cynthia Sass, P.A.
601 W. Dr. Martin Luther King Jr. Boulevard
Tampa, Florida 33603
Telephone: (813) 251-5599
Facsimile: (813) 259-9797
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 23, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

Tracey K. Jaensch, Esquire at tjaensch@fordharrison.com

Elizabeth P. Kuhn, Esquire at ekuhn@fordharrison.com

Paul A. Donnelly, Esquire at pdonnelly@laborattorneys.org

Jung Yoon, Esquire at jyoon@laborattorneys.org


    s/ Cynthia N. Sass
    Attorney