# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ANTHONY BOOTH, et al.,**

     **Plaintiffs,**

**v.**                           **Case No.  8:09-cv-2621-T-30TBM**

**PASCO COUNTY, FLORIDA, et al.,**

     **Defendants.**

_____/

# <u>ORDER</u>

THIS CAUSE comes before the Court upon: (1)  Defendant Pasco County's Motion for Summary Judgment Against Anthony Booth (Dkt. 111), and Plaintiffs' Response (Dkt. 133); (2) Defendant Pasco County's Motion for Summary Judgment Against Jerry Brown (Dkt. 112), and Plaintiffs' Response (Dkt. 132); (3) Plaintiffs' Motion for Partial Judgment on the Pleadings, and/or Motion for Partial Summary Judgment Against Defendant Pasco County (Dkt. 106), and Defendant Pasco County's Response (Dkt. 131); (4) Defendant International Association of Firefighters Local 4420's Motion for Summary Judgment (Dkt. 109), and Plaintiffs' Response (Dkt. 129); and (5) Plaintiffs' Motion for Partial Judgment on the Pleadings, and/or Motion for Partial Summary Judgment Against Local 4420 (Dkt. 102), and Local 4420's Response (Dkt. 127).  The Court, having considered the motions, responses, and being otherwise advised, concludes that the motions for summary judgment should be granted in part and denied in part, as stated herein.

## BACKGROUND

Plaintiff Anthony Booth ("Booth") is Hispanic, and his national origin is Venezuelan-Spaniard.  He began working for Pasco County ("the County", or "Pasco County") as a Firefighter/EMT in August of 2003.  Jerry Brown ("Brown") began working for Pasco County as a Driver/Engineer in January of 1997.  Brown's wife's family is Jewish.  Both Brown and Booth ("Plaintiffs" collectively) became dues-paying members of the International Association of Firefighters Local 4420 ("the Union" or "Local 4420") in 2005, when the Union first organized.

Captain Mark Bodden ("Bodden"), Booth's former supervisor at Station 14, allegedly harassed Booth frequently and behaved inappropriately towards him.  Booth asserts that, *inter alia,* Bodden: (1) called him a "beaner"[1] on several occasions; (2) stated that he was a "fucking idiot" for wanting to visit his family in Venezuela; (3) often called him a "wetback;" (4) once turned a blind eye when another firefighter made a racially insensitive comment in his presence; (5) often raised his voice at him, and/or yelled at him in the presence of others; and (6) subjected him to unjust discipline.[2]

Upon filing various grievances and EEOC charges complaining about Bodden's behavior, Booth contends that Pasco County proceeded to retaliate against him, by, *inter alia*:

[1]A derogatory term for Hispanics.

[2]For example, Bodden allegedly unfairly reprimanded him for parking too close to Publix, leaving the fire station without permission, not being in uniform, and improperly acquiring supplies from a hospital.

(1) pressuring him to drop his charges, telling him that a failure to do so might adversely affect his future promotion chances; (2) intimidating and retaliating against those individuals he identified as witnesses to his alleged discrimination; (3) downgrading his performance review in areas of "cooperating with supervisor" and "conformance with...instructions"; (4) transferring him to an undesirable location that required an increased work load; (5) singling him out by name in a County-approved Union Legal Updates Memo; (6) causing him to lose substantial overtime and swap opportunities due to a general poisoning of the work atmosphere against him; and (7) relieving him from active duty until he completed an unwanted fitness for duty examination.

Plaintiff Brown contends that after he was identified as a witness for Booth, Bodden started harassing him by, among other things, making various anti-Semitic remarks.  Upon complaining to the County about Bodden's behavior, Brown contends that Pasco County proceeded to retaliate against him, by, *inter alia*: (1) involuntarily transferring him to an undesirable and less prestigious rat-infested volunteer station rampant with mold and electrical problems, (2) singling him out by name in a County-approved and endorsed Union Legal Updates Memo; (3) causing him to lose substantial overtime and swap opportunities due to a general poisoning of the work atmosphere against him; (4) denying him additional leave for the death of his sister; and (5) relieving him of duty pending a compulsory fitness for duty examination.

Sometime after they were involuntarily transferred to different fire stations, Plaintiffs sought assistance from the Union with their grievances since the Union had allegedly helped

other employees with grievances in the past.  Although the Union later assisted Captain

Bodden at his disciplinary hearing, it refused to help Plaintiffs with their complaints, stating

that Pasco County had "management rights" to transfer the Plaintiffs.

After the Union refused to assist them, Booth and Brown both filed individual

discrimination charges against the Union.  Booth alleged that the Union treated Bodden, and

Caucasians generally, more favorably than Booth.  Consequently, he filed a charge of

national origin discrimination against the Union.  Brown, whose wife's family is Jewish,

filed a charge of religious discrimination after the Union refused to assist him with his

complaints against the County.

A few weeks after the Plaintiffs filed their EEOC charges against the Union, the

Union distributed an "Update on Legal Issues" memorandum to the Union membership.  The

memo, in relevant part, states:

> Local 4420 members Jerry Brown and Anthony Booth have filed a
> Charge claiming unspecified discrimination with the U.S. Equal Employment
> Opportunity Commission against the Union and the County.  The Executive
> Board and our attorney feel it is a frivolous claim with no grounds for support
> and we are extremely confident in winning but will still have to defend the
> charges.  This could be very costly and generate a legal bill of $10,000 or
> more.  If it becomes too costly the Union may have to assess its member's
> additional fees to offset the cost.  We will update you as it progresses.

Plaintiffs allege that the Legal Update was distributed by the Union in retaliation for

their earlier EEOC complaints against the Union.  They contend that the memo, which stated

that union members would likely have to pay more in dues in order to defend against

Plaintiffs' "frivolous" claims,  was designed to turn their fellow firefighters against them.

Indeed, according to Plaintiffs, shortly after the Union distributed the Legal Updates Memo they became social pariahs. *Inter alia,* Plaintiffs contend that union members were no longer willing to swap shifts with them, that they were not welcome at many of the stations which they wished to transfer to, and that they were subjected to numerous instances of hostile and aggressive treatment by the angered union members. In short, Plaintiffs contend that the Legal Updates Memo caused significant detriment to both their careers and their lives.

In its two Motions for Summary Judgment, Pasco County moves for summary judgment on: (1) Booth's hostile work environment claims against the County; and (2) Plaintiffs' retaliation claims against the County. The Union moves for summary judgment on the Plaintiffs' retaliation claims against the Union.[3] Plaintiffs move for judgment on the pleadings, and/or summary judgment on various affirmative defenses filed by the County and the Union.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an

---

[3]Plaintiffs' only remaining claims against Local 4420.

otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989).

I.   **Defendant Pasco County's Motion for Summary Judgment Against Anthony Booth**

A.   **Booth's Hostile Work Environment Claims Against Pasco County**

i.   **Legal Standard**

A claim for hostile work environment discrimination requires a plaintiff to show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002).[4]

ii.   **Discussion**

The County does not contest that Booth meets the first two factors of the five-part test; specifically, that: (1) Booth belongs to a protected group; and (2) that he was subject to unwelcome harassment.

The third factor requires that the harassing conduct be based upon the employee's protected characteristic, in this case Booth's Hispanic national origin.  Here, Plaintiffs present no evidence that the allegedly harassing conduct visited on Booth by persons other than Bodden (such as his involuntary transfer) was motivated by Booth's national origin. As

---

[4]The same standard also applies to retaliation claims under the Florida Civil Rights Act. *Blizzard v. Appliance Direct, Inc.,* 16 So.3d 922, 927 (Fla. 5th DCA 2009).

a result, only Bodden's conduct towards Booth will be considered in connection with his hostile work environment claims.

The fourth factor of a hostile work environment claim requires a plaintiff to show that the alleged harassment was sufficiently severe. A plaintiff must show both that he subjectively perceived the environment to be hostile or abusive, and that a reasonable person would concur in this judgment; thus, the standard contains both a subjective and an objective component. *Miller,* 277 F.3d at 1276.

In considering whether or not the harassment is objectively severe, the Court should consider, *inter alia*: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller,* 277 F.3d at 1276; *Allen v. Tyson Foods,* 121 F.3d 642, 647 (11th Cir. 1997).

In the present case, the Court assumes *arguendo* that Booth subjectively considered Bodden's conduct to be sufficiently severe to create a hostile or abusive work environment; the question therefore becomes whether Bodden's actions can be thought to be sufficiently severe under the objective test. This Court concludes that they cannot.[5]

---

[5]The bar for a hostile work environment claim is especially high, and will not be met unless the alleged conduct is extreme. Courts have consistently noted that Title VII is not a general civility code, and does not protect against all offensive conduct.

Here, Plaintiff has only presented evidence of isolated incidents of relatively mild harassment over a period of eight years.[6]  Moreover, he has failed to show how the conduct unreasonably interfered with his job performance.  As a result, this Court concludes that Booth's hostile work environment claims should be dismissed.

First, while Bodden's racially insensitive comments and behavior is surely discriminatory and offensive, it is simply not sufficiently severe to state a claim for a hostile work environment.  Indeed, the 11th Circuit has dismissed hostile work environment claims alleging significantly more serious conduct.  *See, e.g., Godoy v. Habersham Cty.,* 211 Fed. Appx. 850, 853-54 (11th Cir. 2006) (Court affirmed summary judgment where, *inter alia,* plaintiff endured racial slurs nearly every day, supervisor battered him, and told him "to go back to his boat and sail to South America where he belongs"); *Barrow v. Ga. Pacific Corp.,* 144 Fed. Appx. 54, 57 (11th Cir. 2005) (Court affirmed summary judgment where plaintiff's supervisor threatened to "kick [his] black ass," co-workers displayed the rebel flag, bathroom had KKK graffiti, a noose was found in a locker, and supervisors called plaintiff "nigger," "black boy," and "dumb ass.")

Second, Booth's allegations that Bodden improperly disciplined him on isolated occasions, and often yelled at him are merely "generalized complaints of constant needling and criticism" that are insufficient as a matter of law to create a hostile work environment. *See, e.g., Blackburn v. Shelby Count,* 2011 U.S. Dist. LEXIS 16851, *70 (W.D. Tenn. 2011).

---

[6]Booth first became employed with Pasco County in August of 2003.

It is clear that Booth and Bodden had a difficult working relationship; however, this is insufficient to state a claim for a hostile work environment.

In opposing Pasco County's motion on this issue, Plaintiffs cite to a single case, *Cote v. Shinseki*, 2009 WL 1537901 (M.D. Fla. 2009). In that case, the plaintiffs complained that they were removed from leadership positions, had their medical duties and privileges reduced, and/or suspended, were investigated, were moved into smaller out-of-the way offices, were given lowered evaluations, had their pay decreased, and were suspended from employment. *Id.* at *1. The Court found that the plaintiffs had offered enough evidence to survive a motion for summary judgment on their hostile work environment claims. *Id.* at *15.

Plaintiffs' reliance on *Cote* is misplaced. First, the alleged harassing conduct is more severe in that case than here. Here, for example, Booth suffered no pay decrease (he actually received an increase), and was not demoted. Second, as discussed above, there is no evidence that Booth's transfer and lowered performance evaluation was in any way related to his protected status (his nation origin). As a result, such actions cannot serve to support his hostile work environment claim.

In sum, as Booth has failed to show that he was subjected to sufficiently severe conduct, he has failed to show a valid claim for hostile work environment discrimination. Accordingly, Pasco County is entitled to summary judgment on this issue.

B.      **Booth's Retaliation Claims Against Pasco County**

i.      **Legal Standard**

"A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008); *Butler v. Alabama Dep't of Transp.,* 536 F.3d 1209, 1212-13 (11th Cir. 2008) ("To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events.").[7]  Plaintiff's burden of establishing a *prima facie* case is not heavy.  *See Crapp v. City of Miami Beach,* 242 F.3d 1017, 1020 (11th Cir. 2001) ("the *prima facie* requirement is not an onerous one").

Importantly, the *McDonnell Douglas* burden-shifting framework applies to Title VII retaliation claims relying on circumstantial evidence.  *Brown v. Alabama Dept. Of Transp.,* 597 F.3d 1160, 1181 (11th Cir. 2010).  Once a plaintiff has made a *prima facie* case of retaliation, "the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the defendant is able to successfully rebut the presumption of retaliation, then the burden

---

[7]The same standard also applies to retaliation claims under the Florida Civil Rights Act. *Blizzard v. Appliance Direct, Inc.,* 16 So.3d 922, 926 (Fla. 5th DCA 2009).

shifts back to the plaintiff to show that the defendant's purported reasons are a mere pretext for retaliation.  *Id.* at 1181-82.

### ii.    Discussion

In its Motion for Summary Judgment, Pasco County neither disputes that Booth engaged in protected action, nor that there was a causal connection between his protected activity and the alleged adverse employment action(s); however, Pasco County strenuously disputes that Booth suffered an adverse employment action.

### 1.    Adverse Employment Action Legal Standard

In order to make a *prima facie* case of retaliation under Title VII, a plaintiff must show that she has "suffered an adverse employment action such that "a reasonable employee would have found the challenged action materially adverse" which "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern & Santa Fe Railway Co.,* 548 U.S. 53, 68 (2006).

In *Crawford,* the 11th Circuit explicitly noted that this new *Burlington* "adverse employment action" standard for retaliation cases was significantly more liberal than the standard previously applied in this Circuit.  Indeed, it stated that *Burlington* "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus

constitute adverse employment actions." *Crawford v. Carroll,* 529 F.3d 961, 974, n.13 (11th Cir. 2008).[8]

Moreover, "while some adverse actions may not individually rise to the level of an adverse employment action under Title VII, the Court may consider adverse actions collectively to determine whether the totality of the alleged actions rise to a level of substantiality to constitute unlawful retaliation." *Cote v. Shinseki,* 2009 WL 1537901, *5 (M.D. Fla. 2009); *Shannon v. Bellsouth Telecomms., Inc.,* 292 F.3d 712, 716 (11th Cir. 2002).

## 2.   Did Booth Suffer an Adverse Employment Action?

Here, the Court concludes that there is sufficient evidence to create a question of material fact as to whether Pasco County's alleged actions taken against Booth amount, collectively, to an adverse employment action such that a reasonable person would be dissuaded from filing a charge of discrimination.

As discussed above, Booth contends that after he filed grievances and EEOC complaints, Pasco County took several retaliatory actions against him. Perhaps Booth's most serious accusation is his alleged involuntary transfer. Specifically, Booth asserts that after he complained to his superiors about Bodden's distasteful conduct he was involuntarily

---

[8]It also noted that its former, more stringent, "materially adverse" standard requiring a "serious and material" change in "terms, conditions, or privileges of employment" continues to apply to substantive discrimination claims under Title VII. *Id.* at 974, n.14.

transferred to a less desirable station in which he was required to take on a significantly increased workload.[9]

Several cases have found that an involuntary transfer to a significantly less desirable location, and/or shift can alone be sufficient to constitute an "adverse employment action" under the new relaxed standard announced in *Burlington. See, e.g., Burlington,* 548 U.S. 53, 70-71 (transfer of position requiring employee to take on more arduous and dirtier work with less prestige sufficient to constitute an "adverse action"); *Fitzgerald v. Ennis Bus. Forms, Inc.,* 2007 WL 8179, *6 (W.D. Va. 2007) (concluding that transferring employee from the day shift to the night shift was sufficient to constitute an adverse action).  Here, transferring Booth to an allegedly significantly less desirable station requiring an increased work load could arguably dissuade a reasonable worker from complaining about harassment, and thus could be seen to constitute an "adverse employment action."

In addition to his alleged involuntary transfer, Booth claims that County approved and endorsed the Legal Updates Memo, a Union Communication that identified Booth by name, called his EEOC charges "frivolous" and stated that the Union might have to raise additional dues in order to pay for his lawsuit.  Assuming that the County was responsible for the memo,[10] a reasonable juror could conclude that the posting of the Legal Updates Memo would dissuade a reasonable worker from making a charge of discrimination as it is entirely

---

[9]According to Booth, Bodden, and Himmel, involuntary transfer is a form of in-house discipline.

[10]Although it is far from clear that the County had actual responsibility for the contents of the Legal Updates Memo, the Court will assume the County's responsibility for the purposes of summary judgment since there is some evidence that the County was responsible.

foreseeable that such a memo would provoke anger from union members disinclined to pay for the defense of a frivolous lawsuit. *See Franklin v. Local 2 of the Sheet Metal Workers Int'l Assoc.,* 565 F.3d 508, 513, 520 (8th Cir. 2009) (union's posting memo that identified plaintiff's name and legal bills associated with fighting plaintiff's EEOC charge would arguably dissuade a reasonable worker from making a charge of discrimination).

While it appears that either Booth's involuntary transfer or the Distribution of the Legal Updates Memo might be enough by itself to constitute an adverse employment action under the relaxed *Burlington* standard, the Court does not need to make this determination. On the contrary, the Court can consider all of the alleged retaliatory actions collectively. According to Booth, *inter alia,* he was involuntarily transferred to an unpleasant location, made into a social pariah by the publication of the Legal Updates Memo, made to submit to a "fitness for duty" examination on pain of losing his job, pressured to drop his charges, and given a bad performance review. Viewing all of these alleged retaliatory actions together, it is clear that Booth has offered enough evidence to survive summary judgment on the issue of whether he suffered an adverse employment action.

Pasco County argues that neither Booth's involuntary transfer, his lower performance rating, his alleged denial of overtime, and/or his failure to be promoted constitute an adverse employment action under *Burlington.* This Court finds the County's arguments unpersuasive.

First, while Pasco County cites to several cases purporting to show that Booth has not suffered an adverse employment action, virtually all of these cases are beside the point as Pasco County repeatedly cites to either pre-*Burlington* cases or to the "materially adverse" standard of *substantive Title VII* discrimination claims.  As both of these standards are significantly more stringent than that announced in *Burlington,* these cases have little persuasive value.

Second, the County fails to acknowledge that Booth's alleged adverse actions may be considered collectively.  Thus, even if one alleged retaliatory act, such as Booth's lowered performance rating, is not sufficient by itself to constitute an "adverse employment action," it does not follow that Booth has therefore failed to suffer an adverse action.

For the above reasons, the Court concludes that the Plaintiffs have sufficiently raised a dispute of material fact as to whether Booth suffered an adverse employment action.  As Pasco County does not dispute the first and third prongs of the test, Booth has met his *prima facie* case for purposes of summary judgment.

Upon making his *prima facie* case, the burden shifts to Pasco County to show that it had legitimate, non-discriminatory reasons for taking all of its alleged retaliatory actions. While the County makes the conclusory assertion that it had legitimate, non-discriminatory reasons for taking all of its actions, it fails to put forth an argument for this proposition in its Motion for Summary Judgment.  As a result, this is a matter that will have to be left for trial.

### C.      Booth's Alleged Failure to Promote Claims

In its Motion for Summary Judgment, Pasco County argues that Booth cannot establish a *prima facie* failure-to-promote claim and that accordingly this claim should not proceed to trial.  As Booth never raised this claim in his Fourth Amended Complaint, this Court agrees.

## II.    Defendant Pasco County's Motion for Summary Judgment Against Jerry Brown

### A.      Brown's Retaliation Claims Against Pasco County[11]

Pasco County concedes that Brown engaged in protected conduct by filing grievances and EEOC complaints, and does not dispute that much of Pasco County's alleged retaliatory activity was causally related to his protected status; however, Pasco County vigorously disputes the second factor, that Brown suffered an adverse employment action.  Moreover, it contends, as a threshold matter, that some of the retaliatory conduct alleged by Brown in this lawsuit was not contained in his prior EEOC complaints and that it should therefore not be considered by this Court.

#### i.      Brown's Alleged Failure to Exhaust Administrative Remedies

Pasco County alleges that none of Brown's allegations about his transfer, lack of promotion, and/or denial of overtime were included in his prior EEOC complaints.

---

[11]For a discussion of the legal standards for retaliation claims under Title VII, § 1981, and the FCRA, *see supra,* §I(B)(i).

Accordingly, Pasco contends that he should be barred from raising these allegations in this litigation.

Pasco County is correct to argue that a plaintiff generally cannot raise charges not contained in his EEOC complaint for the first time in litigation. *See, e.g., Jerome v. Marriott Residence Inn,* 211 Fed. Appx. 844, 846-47 (11th Cir. 2006).  However, there are well-recognized exceptions to this rule.

One exception allows courts to hear charges "[i]f the allegations of the subsequent complaint could have been a reasonably expected out-growth of the EEOC's investigation of the charged conduct." *Buzzi v. Gomez,* 62. F.Supp.2d 1344, 1351-52 (S.D. Fla. 1999); *Wu v. Thomas,* 863 F.2d 1543, 1547 (11th Cir. 1989).  Brown's allegation about his transfer falls under this exception.  In his EEOC complaint, Brown explicitly stated that "threats of transfers are always being thrown at me."  The Court therefore concludes that his alleged involuntary transfer was "reasonably related" to his EEOC charge because one would expect this alleged involuntary transfer to be discovered upon the EEOC's investigation of the charged conduct.

A second exception allows courts to hear charges not contained in an EEOC complaint if those claims are for retaliation against the employee for filing an EEOC charge. *Buzzi,* 62 F.Supp.2d, at 1352.  Courts have found that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an

administrative charge that is properly before the court." *Baker v. Buckeye Cellulose Corp.,* 856 F.2d 167, 169 (11th Cir. 1988) (quoting *Gupta v. East Texas State Univ.,* 654 F.2d 411, 414 (5th Cir. 1981)).  As Brown alleges that he was not denied promotion opportunities and overtime until *after* the filing of his EEOC charge, the fact that these allegations were not included in his EEOC charge does not prevent the Court from considering them.

### ii.    Did Brown Suffer an Adverse Employment Action?

Brown's allegations of retaliatory conduct are remarkably similar to those asserted by Booth.  *Inter alia,* Brown and Booth both allege that they were involuntarily transferred, singled out by name in the Union's Legal Updates Memo, caused to lose overtime opportunities, and made to submit to a fitness for duty examination.

Here, Brown appears to have been transferred to an even less desirable station than Booth, as Brown's new station was, among other things, allegedly rat-infested and rampant with mold and electrical problems.  As discussed in some detail above, several courts have found that an involuntary transfer to a significantly less desirable location or shift can by itself be sufficient to constitute an adverse employment action under the more relaxed *Burlington* standard.  Thus, it is arguable that Brown's involuntary transfer is by itself sufficient for him to survive the County's Motion for Summary Judgment on this issue.

Brown's name was also on the Union's Legal Updates Memo.  That memo identified him by name, called his EEOC charges "frivolous" and stated that the Union might have to raise additional dues in order to pay for his lawsuit.  Assuming that the County was

responsible for the memo,[12] a reasonable juror could conclude that the posting of the memo would dissuade a reasonable worker from making a charge of discrimination as it is entirely foreseeable that the memo would provoke anger from union members disinclined to pay for the defense of a frivolous lawsuit. *See Franklin v. Local 2 of the Sheet Metal Workers Int'l Assoc.,* 565 F.3d 508, 513, 520 (8th Cir. 2009) (union's posting memo that identified plaintiff's name and legal bills associated with fighting plaintiff's EEOC charge would arguably dissuade a reasonable worker from making a charge of discrimination).

While it appears that either Brown's involuntary transfer or the Distribution of the Legal Updates Memo might be enough by itself to constitute an adverse employment action under the relaxed *Burlington* standard, the Court does not need to make this determination for the Court can consider all of the alleged retaliatory actions collectively.  According to Brown, *inter alia,* he was involuntarily transferred to an unpleasant location, made into a social pariah by the publication of the Legal Updates Memo, and made to submit to a "fitness for duty" examination on pain of losing his job.  Viewing these three alleged retaliatory actions together, it is clear that Brown has offered enough evidence to survive summary judgment on the issue of whether he suffered an adverse employment action.

In opposing Brown's claim that he suffered an adverse employment action, Pasco County makes essentially the same arguments it made in the case of Booth. As the Court has

---

[12]Although it is far from clear that the County had actual responsibility for the contents of the Legal Updates Memo, the Court will assume the County's responsibility for the purposes of summary judgment since there is some evidence that the County was responsible.

already rejected those arguments in the case of Booth, it does so now in the case of Brown.

Accordingly, the Court concludes that Brown has presented a *prima facie* case for retaliation

against Pasco County sufficient to survive a motion for summary judgment. (Pasco County

does not dispute the first and third factors of the three-part test).

While the County alleges that it had legitimate, non-discriminatory reasons for taking

all of its actions, this is a matter that will have to be left for trial as Pasco County has failed

to present any kind of sustained argument in support of this contention.  Moreover, there are

conflicting accounts of the reasons for Pasco County's conduct sufficient to raise a material

question of fact for the jury on the issue of the County's reasons for its actions.

## B.      Brown's Alleged Failure to Promote Claims

In its Motion for Summary Judgment, Pasco County argues that since Brown has

failed to establish a *prima facie* failure to promote claim, this claim should not go to trial.

As Brown has not included such a claim in his Fourth Amended Complaint, this Court

agrees.

## C.      Brown's Alleged Hostile Work Environment Claims

In its Motion for Summary Judgment, Pasco County argues that since Brown has

failed to show a viable hostile work environment claim, this claim should not proceed to trial.

As Brown has not included such a claim in his Fourth Amended Complaint, this Court

agrees.

III.    **Plaintiffs' Motion for Partial Judgment on the Pleadings, and/or Partial Summary Judgment against Defendant Pasco County**

Plaintiffs move for judgment on the pleadings, and/or summary judgment on twelve of Pasco County's fifteen affirmative defenses included in its Answer to Plaintiffs' Fourth Amended Complaint. This Court has already considered and denied Plaintiffs' previous motion to strike, and/or dismiss identical affirmative defenses contained in Pasco County's Answer to Plaintiffs' Third Amended Complaint. As a result, this Court will not revisit the issue here. Accordingly, this Court concludes that Plaintiffs' motion for judgment on the pleadings with respect to all of the challenged affirmative defenses should be denied; however, this Court will review Plaintiffs' Partial Motion for *Summary Judgment* with respect to these affirmative defenses.

A.    **Pasco County's Second and Third Affirmative Defenses**

Plaintiffs move for summary judgment on Pasco County's second and third affirmative defenses. Pasco County's second affirmative defense states that:

> Plaintiffs' claims are barred to the extent Plaintiffs failed to exhaust their administrative remedies.

Pasco County's third affirmative defense states that:

> Plaintiffs' claims are barred, in whole or in part, to the extent that they exceed the scope of or are inconsistent with the charge(s) of discrimination filed with any fair employment practices agency authorized to receive such charges.

In its response to Plaintiffs' Motion for Partial Summary Judgment, Pasco County alerts this Court to certain specific facts in possible support of these affirmative defenses. If, for example, Plaintiffs attempt to raise at trial allegations in support of Booth's disparate treatment claims which were not contained in his prior EEOC charges, one of these failure to exhaust administrative remedies defenses may be available. Accordingly, Plaintiffs are not entitled to summary judgment with respect to these two affirmative defenses.

### B.    Pasco County's Fourth Affirmative Defense

Plaintiffs' move for summary judgment on Pasco County's Fourth Affirmative Defense which states that:

> Plaintiffs' claims are barred to the extent that Plaintiffs did not file them within the applicable statute of limitations period under the law.

In its response, Defendant Pasco County presents no evidence that might support such a defense; thus, this Court concludes that Plaintiffs are entitled to summary judgment on this issue.

### C.    Pasco County's Fifth Affirmative Defense

Plaintiffs' move for summary judgment on Pasco County's Fifth Affirmative Defense, which states that:

> Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands, waiver, and/or estoppel.

*Inter alia,* there is some evidence that Booth and Brown themselves started the rumor of their proposed lawsuit against the Union *before* the Union distributed its Legal Updates Memo.  Thus, there is some evidence that they were responsible, in whole or in part, for the complained-of actions of their fellow union members. Thus, these equitable defenses may be applicable.  Accordingly, Plaintiffs are not entitled to summary judgment on this issue.

### D.     Pasco County's Seventh and Eighth Affirmative Defenses

Plaintiffs move for summary judgment on Pasco County's seventh and eighth affirmative defenses.  Pasco County's seventh affirmative defense states that:

> Any employment actions taken by Pasco with respect to Plaintiffs were based upon legitimate, non-discriminatory, non-retaliatory factors other than Plaintiffs' alleged protected class or activity.

Its eighth affirmative defense states that:

> Alternatively, in the event that the Court or a jury should ever conclude that Plaintiffs' alleged protected class or protected activity were a factor in the employment actions challenged by Plaintiffs, Pasco affirmatively avers that the same employment decision(s) would have been made absent consideration of Plaintiffs' alleged protected class or activity.[13]

The Court concludes that Plaintiffs' Motion for Summary Judgment on these two defenses should be denied.  Defendant Pasco County has asserted a non-discriminatory, legitimate reason for most, if not all, of its alleged discriminatory actions.  For example, with respect to the alleged involuntary transfers, it has asserted both that these were undertaken

---

[13]This defense is known informally as the "mixed motive" defense.

in order to meet "operational needs" and to "diffuse lingering negativity at station 14."

Plaintiffs may disagree with the veracity of the County's proffered reasons for its actions, but

this is an issue appropriate for a jury to decide.  As Pasco County has raised a genuine issue

of material fact as to whether its seventh and eighth affirmative defenses are applicable, this

Court concludes that Plaintiffs are not entitled to summary judgment with respect to these

two affirmative defenses.

### E.     Pasco County's Ninth Affirmative Defense

Plaintiffs move for summary judgment on Pasco County's Ninth Affirmative Defense which

states that:

> Plaintiffs have the duty to mitigate any alleged losses, their entitlement to
> recovery for which is expressly denied; alternatively, any claim for relief must
> be set off and/or reduced by wages, commissions, compensation, pay and
> benefits, other earnings or remunerations, profits and benefits regardless of
> form received by Plaintiffs or which were earnable or receivable with the
> exercise of reasonable diligence by Plaintiffs.

The Court concludes that Plaintiffs' Motion with respect to this issue should be denied

as Defendant Pasco County has raised sufficient facts such as to present a genuine issue of

material fact as to whether this defense is available.  For example, to the extent that Plaintiffs

claim that Pasco County's allegedly discriminatory conduct prevented Booth and Brown

from getting overtime pay, Defendant could present its evidence that they allegedly failed

to adequately pursue overtime opportunities and thus failed to mitigate their damages.

Accordingly, Plaintiffs are not entitled to summary judgment on this issue.

### F.      Pasco County's Tenth, Eleventh, and Twelfth Affirmative Defenses

Plaintiffs move for summary judgment on Pasco County's Tenth, Eleventh, and

Twelfth Affirmative Defenses.  Their tenth defense states that:

> To the extent any of Plaintiffs' allegations of misconduct by Pasco's employees are true, which Pasco expressly denies, Plaintiffs' claims still fail because any such misconduct was not authorized, adopted or ratified by Pasco, and Pasco neither knew nor should have known of such conduct.

Their eleventh defense states that:

> If any improper, illegal or discriminatory acts were taken by any Pasco employee against Plaintiffs, which Pasco expressly denies, it was outside the course and scope of that employee's employment, contrary to Pasco's policies, and was not ratified, confirmed or approved by Pasco.  Thus, any such actions cannot be attributed or imputed to Pasco.

Pasco's twelfth defense states that:

> Any improper, illegal or discriminatory actions by any Pasco employees were independent, intervening, and unforeseeable acts that were not ratified, confirmed, or approved by Pasco, and thus, cannot be attributed or imputed to Pasco.

This Court concludes that Plaintiffs' Motion for Summary Judgment with respect to

Pasco's tenth, eleventh, and twelfth defenses should be denied as Pasco County has presented

sufficient facts to raise a genuine issue of material fact as to the availability of these defenses.

These three defenses all allege that Pasco County is not responsible for certain alleged

actions that were not ratified, confirmed, or approved by Pasco.  In its own Motion for

Summary Judgment, Pasco County has argued, *inter alia,* that it did not ratify or confirm

Bodden's discriminatory conduct (indeed, it subjected him to discipline), and that it lacked the right to determine the contents of the Union's Legal Updates Memo.  Thus, the County has presented sufficient facts to raise a genuine issue of material fact as to whether the County can be said to be responsible for all of the alleged discriminatory actions.

### G.     Pasco County's Thirteenth and Fifteenth Affirmative Defenses

Plaintiffs move for summary judgment on Pasco County's thirteenth and fifteenth affirmative defenses.  In its response, Pasco County withdraws these defenses.  Accordingly, Plaintiffs are entitled to summary judgment with respect to Pasco County's thirteenth and fifteenth defenses.

## IV.   Defendant Pasco County Professional Firefighters, Local 4420, IAFF's Motion for Summary Judgment

While Plaintiffs originally brought discrimination and retaliation claims against the Union, this Court has since dismissed Plaintiffs' discrimination claims.  Accordingly, only the Plaintiffs' retaliation claims remain before this Court.

The Union now moves for summary judgment on all of the Plaintiffs' retaliation claims against the Union.[14]  In doing so, the Union argues that they are entitled to summary judgment with respect to all three prongs of the three-part *prima facie* test.  Alternatively, the Union argues that  even if the Plaintiffs can successfully make out a *prima facie* case of

---

[14]For a discussion of the legal standards for retaliation claims under Title VII, § 1981, and the FCRA, *see supra,* §I(B)(i).

retaliation, they nonetheless cannot rebut the Union's legitimate, non-discriminatory reasons for its actions.

### A.      The Union Contends that Plaintiffs did not Engage in Protected Activity

The Union contends that in this particular case the Plaintiffs' April 2008 EEOC charges against the Union did not constitute protected activity.  First, the Union argues that these charges did not implicate interests protected by 42 U.S.C. § 1981 or Title VII.  Second, they assert that Brown's EEOC charge alleging religious discrimination cannot support his retaliation claim based on  § 1981.  Third, they contend that Plaintiffs' EEOC charges were unreasonable and made in bad faith and therefore should not be protected.

### i.      Did the Plaintiffs' EEOC Charges Implicate Activity Protected by 42 U.S.C. § 1981 or Title VII?

The Union argues first that Plaintiffs' April 2008 EEOC charges did not implicate activity protected by 42 U.S.C. § 1981 or Title VII and thus cannot support the Plaintiffs' retaliation charges.  In support of this contention, the Union relies on *Jimenez v. Wellstare Health System,* 596 F.3d 1304 (11th Cir. 2010).  In that case, the plaintiff physician filed an EEOC charge claiming that his medical privileges were suspended because of his race.  *Id.* at 1311.  The Court found that the suspension of these privileges did not implicate any right protected by § 1981 because the plaintiff did not have any contractual or property interest in maintaining medical privileges at Georgia hospitals; the plaintiff had only privileges.  *Id.*

Here, the Union argues that since there was no collective bargaining agreement between the Union and Pasco County at the time that they filed their first EEOC charges against the Union, those EEOC charges failed to implicate rights protected by either § 1981 or Title VII.

The Union's reliance on *Jimenez* in this instance is misplaced.  Here, Plaintiffs' EEOC complaints against the Union allege: (1) that their contractual rights with *Pasco County* have been violated; and (2) that the Union failed to assist them in their grievances against the County because of their protected status.  A labor union, which bears certain duties to its members, may be liable for such discriminatory conduct.  *See, e.g., Melton v. Nat'l Dairy LLC,* 705 F.Supp.2d 1303, 1328 (M.D. Ala. 2010) (A labor union may "be subject to liability under § 1981 [or Title VII] for racial discrimination if its conduct impairs an employee's ability to enforce his established contract rights through legal process."); *Goodman v. Lukens Steel Co.,* 482 U.S. 656 (1987) (superseded by statute on other grounds) ("A union which intentionally avoids asserting discrimination claims, either so as not to antagonize the employer and thus improve its chances of success on other issues, or in deference to the perceived desires of its white membership, is liable under [Title VII].")[15] As the Union would

---

[15]*See also Patterson v. McClean Credit Union,* 491 U.S. 164, 177-78 (1989) (superseded by statute on other grounds) ("[C]ertain private entities such as labor unions, which bear explicit responsibilities to process grievances, press claims, and represent members in disputes...are subject to liability under § 1981 for racial discrimination in the enforcement of labor contracts.")

be liable if it intentionally failed to process Plaintiffs' complaints because of their protected status, Plaintiffs' EEOC Complaints implicate interests protected by § 1981 and Title VII.[16]

### ii. Can Brown's EEOC Charge Alleging Religious Discrimination Support his Retaliation Claim based on § 1981?

The Union argues second that Brown's April 2008 EEOC charge cannot support his retaliation claim predicated on § 1981. Plaintiffs concede that a charge of *religious discrimination* cannot support a retaliation charge under § 1981 but argue that Brown can nonetheless maintain his retaliation charge under § 1981 because his claims of retaliation are so closely related to Booth's charges. However, Brown's April EEOC complaint only alleges religious discrimination by the Union, and makes no mention of his alleged belief that he suffered retaliation for assisting Booth. Thus, this Court agrees with the Union that, as a matter of law, Brown's April 2008 EEOC charge cannot support his retaliation claim under § 1981. Accordingly, the Union is entitled to summary judgment on this issue.[17]

### iii. Must a Plaintiff Have a Good Faith, Reasonable Basis for Filing an EEOC Charge in Order to be Protected from Retaliation for Filing that Charge?

The Union argues that Plaintiffs' EEOC charges should not qualify as protected activity unless they had a good-faith reasonable basis to file such charges. As they contend

---

[16]This of course says nothing about the merit of these discrimination charges. Indeed, this Court has previously dismissed Plaintiffs' discrimination charges against the Union.

[17]This does not, however, affect Booth's retaliation claims under Title VII and the FCRA.

that Booth and Brown lacked a good-faith reasonable basis for their EEOC charges against the Union, they argue that the Plaintiffs' EEOC charges should not be given protected status.

When making a retaliation claim under Title VII, one can show that he engaged in protected activity by demonstrating that he qualifies under either the "opposition clause" or the "participation clause." Filing an EEOC charge is "participation" activity. *E.E.O.C. v. Total Systems Services, Inc.,* 221 F.3d 1171, 1174 (11th Cir. 2000).

While it is clear that one does not qualify for protection under the opposition clause unless one had a good-faith reasonable belief that the employer engaged in unlawful activity, (*See, e.g., Little v. United Technologies,* 103 F.3d 956, 959-60 (11th Cir. 1997)) the parties dispute whether activity under the participation clause similarly requires a good-faith, reasonable belief in order to be protected.

Two recent cases in this circuit have discussed the issue of whether a good-faith, reasonable basis is required under the participation clause, but both have declined to decide it. *See Wideman v. Wal-Mart Stores, Inc.,* 141 F.3d 1453, 1455 (11th Cir. 1998); *Soto v. Bank of America,* 2005 WL 261116, *10 (M.D. Fla). Other circuits have come to different decisions with respect to this issue, although most have declined to impose a good-faith, reasonable basis requirement.

Nonetheless, the Union argues that this Court should deny Plaintiffs' protection for filing an EEOC charge unless they had a good-faith, reasonable basis to do so. The Union bases their argument primarily on the authority of *Mattson v. Caterpiller, Inc.,* 359 F.3d 885

(7th Cir. 2004). In *Mattson,* a male former employee sued his former employer under Title VII alleging retaliation in response to his EEOC charge alleging sexual harassment by his former female supervisor. *Id.* at 887.  Plaintiff's EEOC charge stated that: (1) one of his former supervisor's breasts had once touched his arm in the course of a conversation; and (2) his former supervisor once reached around him to get a clipboard but had not touched him. *Id.*  at 888.  There was strong evidence that these charges were filed in bad faith with the malicious purpose of getting rid of Mattson's former supervisor, with whom he had had a tempestuous working relationship.[18]  *Id.*

Noting that Mattson's EEOC charge was both baseless on its face, and that there was strong evidence that it was filed maliciously, the Court concluded that his EEOC complaint should not be entitled to protection.   *Id.* at 890.  It went on to hold that a plaintiff should not be protected under the participation clause for filing an EEOC charge unless the plaintiff had a good-faith reasonable basis for making such a charge.  *Id.* at 891-92.  The Union argues that this Court should adopt the rule formulated in *Mattson.*

This Court disagrees.  Importantly, the leading case taking an opposing view, *Pettway v. American Cast Iron Pipe Co.,* 411 F.2d 998 (5th Cir. 1969), is binding authority in this circuit.[19]  In *Pettway,* the Court noted that the EEOC complaints procedure was designed to give vulnerable employees the ability to protest unjust employment practices against their

---

[18]In the present case, the evidence does not support a finding that the Plainitffs' EEOC charges were filed maliciously.

[19] Cases decided by the 5th Circuit before the creation of the 11th Circuit in 1981 are considered binding precedent in the 11th Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

much more powerful and resourceful employers without fear of reprisal. *Id.* at 1005. Moreover, it reasoned that this protection against retaliation would "acquire[] a precarious status" if employers were entitled to discipline employees upon determining that an employee's charge was unreasonable. *Id.* In addition, it emphasized the fact that charges are typically drafted by the legally uneducated, and thus should be given special leeway. *Id.* Given these and other considerations, the Court ultimately declined to make the protections given to an EEOC charge contingent on the contents of that charge, and held that such a charge would be protected even if it contained false, and/or malicious contents. *Id.* at 1007. Thus, the Court declined to read a good faith and reasonableness requirement into the protections afforded to the participation clause.

Supported by sound law and policy, it appears that a majority of courts that have considered the issue have been sympathetic to the *Pettway* rule. *See, e.g., Wyatt v. City of Boston,* 35 F.3d 13, 15 (1st Cir. 1994) ("As for the participation clause, 'there is nothing in its wording requiring that the charges be valid, nor even an implied requirement that they be reasonable.'") (quoting 3 Arthur Larson & Lex K. Larson, *Employment Discrimination §* 87.12(b), at 17-95 (1994)); *Slagle v. County of Clarion,* 435 F.3d 262, 268 (3rd Cir. 2006) ("Once a plaintiff files a facially valid complaint, the plaintiff will be entitled to the broad protections of § 704(a), as interpreted by the EEOC and by numerous courts...the EEOC Compliance Manual states that a plaintiff is protected under the participation clause 'regardless of whether the allegations in the original charge were valid or reasonable.'"); *Johnson v. University of Cincinnati,* 215 F.3d 561, 582 (6th Cir. 2000) ("The exceptionally

broad protections of the participation clause extends to persons who have participated in any manner in Title VII proceedings...Protection is not lost if the employee is wrong on the merits of the charge...nor is protection lost if the contents of the charge are malicious or defamatory as well as wrong."); *Glover v. South Carolina Law Enforcement Division,* 170 F.3d 411, 414 ("Reading a reasonableness test into section 704(a)'s participation clause would do violence to the text of that provision and would undermine the objectives of Title VII") (4th Cir. 1999).

For the above reasons, this Court declines to read a good faith and reasonableness requirement into the participation clause.[20]  Accordingly, as Plaintiffs have filed EEOC complaints against the Union (asserting interests implicated by § 1981 and Title VII), they have engaged in protected activity, thus meeting the first prong of the three-part *prima facie* test.[21]

**B.      The Union Asserts that the Plaintiffs' Suffered No Adverse Action[22]**

The Court concludes that there is sufficient evidence to create a question of material fact as to whether the Union's alleged actions taken against Booth and Brown amount,

---

[20]Moreover, declining to read a good faith and reasonableness requirement into the participation clause does not render employers hostage to vindictive employees.  Employers may still discipline, and/or terminate employees who filed EEOC charges, they simply cannot do so *because* they filed such a charge. Moreover, employees may not make such charges with impunity.  For example, the filing of a defamatory charge may enable an employer to sue that employee for defamation.  In addition, a defendant may be awarded attorney's fees and other costs for successfully defending a frivolous action.

[21]With the previously-noted exception of Brown's retaliation claim based on § 1981.

[22]For a discussion of the adverse employment action legal standard for retaliation claims,  *see supra,* §I(B)(ii)(1).

collectively, to an adverse employment action such that a reasonable person would be dissuaded from filing a charge of discrimination.

As discussed in detail above, Booth and Brown contend that the Union distributed the Legal Updates Memo as an act of retaliation after Booth and Brown filed EEOC charges against the Union.  They contend that the memo, which stated that union dues might have to be raised in order to defend against the "frivolous" charges of Booth and Brown, turned them into social pariahs at the station.  *Inter alia,* Plaintiffs allege that the memo indirectly caused them to lose overtime swap opportunities, hindered their advancement prospects, made them unwelcome at certain fire stations which they wished to transfer to, and generally subjected them to various aggressive, harassing and even violent behavior from their fellow union members.  According to Plaintiffs, the Union's actions would dissuade a reasonable worker from making a charge of harassment.

In arguing that the Union's distribution of the Legal Updates Memo constitutes an adverse action, Plaintiffs principally rely on *Franklin v. Local 2 of the Sheet Metal Workers Int'l Assoc.,* 565 F.3d 508 (8th Cir. 2009).  In *Franklin,* after the plaintiffs filed EEOC charges against their union, the union posted those documents in the union hall, identified plaintiffs by name, and listed the legal bills associated with those charges. *Id.* At 513.  The Court held that a reasonable juror could find that the union's actions constituted an adverse employment action sufficient to deter a reasonable worker from bringing a charge of discrimination. *Id.* at 520.

Here, the Legal Updates Memo identified Plaintiffs by name (where the legal updates pertaining to other matters did not include names), characterized the Plaintiffs' charges as frivolous, and stated that the Union would likely have to increase member dues in order to pay what the Union estimated would be substantial legal bills (even though, according to Plaintiffs, the EEOC at this point offered the parties free mediation).

It is entirely foreseeable that the Union's distribution of the Legal Updates Memo would provoke anger from union members disinclined to pay for the defense of a frivolous lawsuit.  Moreover, the alleged resulting social ostracism and associated problems is equally foreseeable.  As no one volunteers for the role of social pariah, a reasonable juror could certainly conclude that the posting of the Legal Updates Memo would dissuade a reasonable worker form making a charge of discrimination.  Accordingly, this Court concludes that the Plaintiffs have met their burden of raising a genuine issue of material fact on the issue of the seriousness of the alleged retaliatory acts.[23]

The Union makes an interesting additional argument as to why the Legal Updates Memo cannot constitute an adverse action; specifically, the Union alleges that the Memo

---

[23]The Union argues that the Union's allegedly retaliatory acts were not sufficiently severe to constitute an adverse action.  Some of the cases that it cites to employ the significantly stricter, pre-*Burlington* standard; thus, these cases are not persuasive.  The remaining cases cited argue that certain alleged individual acts of discrimination, such as a co-worker's anti-social behavior, are insufficient to constitute an adverse action.  While this may be so, when considered collectively, the various alleged adverse actions suffered by Plaintiffs are sufficient to at least raise a jury question as to whether the conduct was sufficiently severe so as to constitute an adverse action under the  more relaxed *Burlington* standard.

constituted core political speech protected by the First and Fourteenth Amendments.[24]

Specifically, the Union alleges that its right to inform its union members of Union legal

matters is protected speech; thus, it asserts that it had a protected right to inform its union

members that: (1) Booth and Brown had filed EEOC charges against the Union; (2) that it

believed such charges to be "frivolous;" and (3) that it might be required to raise union dues

in order to properly defend against these actions.

The Court is not persuaded by this argument as "the regulation of discriminatory

speech in the workplace constitutes nothing more than a time, place and manner regulation

of speech." *Robinson v. Jacksonville Shipyards, Inc.,* 706 F.Supp. 1486, 1535 (M.D. Fla.

1991).   Under the Constitution, a valid time, place and manner regulation "requires a

legitimate governmental interest unrelated to the suppression of speech, content neutrality,

and a tailoring of the means to accomplish this interest."   *Id.* As "the eradication of

workplace discrimination...is a compelling governmental interest," prohibiting discriminatory

workplace speech does not present Constitutional problems.[25] *Id.*  Moreover, discriminatory

speech is not protected speech as "potentially expressive activities that produce special harms

distinct from their communicative impact...are entitled to no constitutional protection."

*Roberts v. United States Jaycees,* 468 U.S. 609, 628 (1984).

---

[24]As well as by the Florida Constitution.

[25]Since the government has a compelling interest in eradicating workplace discrimination, prohibiting discriminatory speech in the workplace should even survive a strict scrutiny challenge (assuming the speech at issue was fully protected).  *Id.* at 1536.

Here, if Plaintiffs are correct in their contention that the Legal Updates Memo constituted retaliation for their filing EEOC charges against the Union, then the Legal Updates Memo constituted discriminatory conduct prohibited by Title VII, which Congress has a compelling interest in eliminating.  Thus, the Union cannot claim that it was protected speech.

### C.   The Union Asserts that the Alleged Adverse Actions Suffered by Plaintiffs are not Causally Connected to their Protected Status

To prove a causal connection, a plaintiff must show only that the protected activity and the adverse action are "not wholly unrelated." *Farley v. Nationwide Mutual Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir. 1999).  A showing of "close temporal proximity" between the protected activity and the adverse action may be sufficient to establish a causal connection. *Shannon v. BellSouth Communications,* 292 F.3d 712, 716-17 (11th Cir. 2002).

Here, the Legal Updates Memo was distributed a few weeks after the Plaintiffs filed their EEOC charges against the Union.  Moreover, the Memo specifically references those charges.  In addition, Plaintiffs offer evidence showing both that none of the alleged harassment by fellow union-members began until after the publication of the Memo, and that such behavior was connected to the distribution of the Memo.

In sum, Plaintiffs have raised a genuine issue of material fact with respect to: (1) whether the Legal Updates Memo was distributed in response to the Plaintiffs' filing EEOC

complaints against the Union; and (2) whether Plaintiffs' various problems with their co-workers, among other things, were caused by the Union's distribution of the legal update.

### D.      The Union Argues that Plaintiffs cannot Establish Pretext

As the Plaintiffs have raised a genuine issue of material fact with respect to each of the three required elements of the three-part test, they have shown a *prima facie* case of retaliation against the Union sufficient to survive summary judgment.  Under the McDonnell-Douglas burden-shifting framework, the burden now shifts to the Union to show that their actions were motivated by legitimate, non-discriminatory reasons.  Here, the Union argues that it distributed the Legal Updates Memo in order to inform its members of pending litigation matters.  As the Union has offered legitimate, non-discriminatory reasons for its actions, the burden once again moves to Plaintiffs to show that the Union's proffered reasons are merely a pretext for retaliation.

While the Union argues that Plaintiffs cannot rebut its legitimate, non-discriminatory reasons for its actions, this is an issue that must be determined at trial as the Plaintiffs have raised sufficient evidence to support a finding that the Union's proffered reasons were pretextual.

In order to avoid summary judgment on the issue of pretext, a plaintiff must show that there is evidence sufficient to cast doubt on the defendant's proffered reasons for its actions such that a reasonable juror could conclude that discrimination was the real reason for the action.  *Combs. v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997).

Here, the Union gives conflicting accounts of its reasons for distributing the Legal Updates Memo, which is itself evidence of pretext.   The primary Union explanation, however, is that the memo was distributed in order to inform union members about ongoing legal affairs.  This Court concludes that a reasonable juror could doubt the veracity of the Union's stated reasons.

First, while the Legal Updates Memo included information on a number of legal matters, only the Plaintiffs' names were disclosed.[26]  A reasonable juror might suspect that Plaintiffs' names were specifically included in furtherance of a retaliatory scheme.  Second, the Memo also stated that dues might have to be raised in order to pay anticipated large legal bills.  According to Plaintiffs, at the time that they filed their EEOC charges, the EEOC offered the parties free mediation; assuming the truth of this allegation, a reasonable juror might suspect that the Union included information about a possible dues increase out of improper retaliatory motives.  Third, when the EEOC issued a reasonable cause finding in Plaintiffs' favor, the Union failed to update, and/or inform the union members regarding the change in status of the lawsuit.  A reasonable juror could conclude that the failure to do so belies the Union's assertion that it merely distributed the Legal Updates Memo in order to inform its members about the status of legal proceedings.

For the above reasons, the Court concludes that Plaintiffs have presented a sufficient evidence of pretext such as to raise a genuine issue of material fact as to whether the Union's

---

[26]According to the Union, other names were not disclosed due to "privacy" concerns.

proffered reasons for its actions were pretextual. Having also demonstrated that there at least exists a genuine issue of material fact with respect to all required elements of their *prima facie* case, Plaintiffs have presented enough evidence to survive a motion for summary judgment.[27]

## V.   Plaintiffs' Motion for Partial Judgment on the Pleadings, and/or Partial Summary Judgment against Defendant International Association of Firefighters Local 4420

Plaintiffs move for judgment on the pleadings, and/or summary judgment on thirteen of the Union's fourteen affirmative defenses included in its Answer to Plaintiffs' Fourth Amended Complaint. This Court has already considered and denied Plaintiffs' previous motion to strike, and/or dismiss identical affirmative defenses submitted by the Union. As a result, this Court will not revisit the issue here. Accordingly, this Court concludes that Plaintiffs' motion for judgment on the pleadings with respect to all of the challenged affirmative defenses should be denied. This Court will, however, review Plaintiffs' Partial Motion for Summary Judgment with respect to these affirmative defenses.

### A.   The Union's Second Affirmative Defense

Plaintiffs move for summary judgment on the Union's second affirmative defense. The defense states that:

> Plaintiffs' claims are barred in whole or in part because plaintiff failed to report or make a complaint pursuant to Local 4420's policies or practices.

---

[27]With the exception of Brown's claim of retaliation predicated on § 1981, as discussed herein.

This Union appears to be relying on the *Faragher* defense.  It is available in a Title VII case when the plaintiff has suffered no tangible employment action and "(a) [] the employer exercised reasonable care to prevent and correct promptly any...harassing behavior, and (b) [] the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998).

Here, the Union has presented evidence that, *inter alia,* its  distribution of the Legal Updates Memo was done to inform union members of pending legal matters, that it promptly stopped communication about Plaintiffs' legal matters after Plaintiffs complained, that Plaintiffs failed to complain to the Union about their co-workers harassing behavior purportedly caused by the distribution of the Union memo, and that the Union had at the time an internal grievance procedure that enabled union members to complain about harassment. Thus, the Union has presented sufficient evidence to raise a genuine issue of material fact as to whether the *Faragher* defense is available.  Accordingly, Plaintiffs are not entitled to summary judgment on this issue.

### B.    The Union's Third Affirmative Defense

Plaintiffs move for summary judgment on the Union's third affirmative defense which states that:

> Plainitffs' claims are barred in whole or in part because plaintiffs have failed to suffer any damages.

The Court concludes that Plaintiffs are entitled to summary judgment on this issue, as this does not appear to be a valid affirmative defense.  The Union is of course free to contest Plaintiffs' calculation of damages at trial.

### C.     The Union's Fourth Affirmative Defense

Plaintiffs move for summary judgment on the Union's fourth affirmative defense which states that:

> Plaintiffs claims are barred in whole or in part because plaintiffs have failed to mitigate their alleged damages.

The Court concludes that Plaintiffs are not entitled to summary judgment with respect to this issue.  *Inter alia,* the Union presents evidence that the Plaintiffs failed to notify the Union that their co-workers were not exchanging overtime shifts with them.  This could lead to a mitigation of damages defense to the extent that Plaintiffs claim damages for lost overtime.

### D.     The Union's Fifth Affirmative Defense

Plaintiffs move for summary judgment on the Union's fifth affirmative defense which states that:

> Plaintiffs' claims are barred in whole or in part because plaintiffs have failed to exhaust their administrative remedies and procedural prerequisites.

The Court grants Plaintiffs' motion on this issue.  The Union argues that some of Plaintiffs' allegations against the Union which were not included in their EEOC charges

should not be considered by this Court; however, as discussed in detail earlier in this Order, a Plaintiff need not file a separate charge if the subsequent allegation is purportedly an act of retaliation for filing an earlier EEOC charge.

Here, all of the Plaintiffs' allegations against the Union: (1) are purportedly retaliatory acts related to the filing of their EEOC charges; and (2) took place after the filing of these charges. As a result, they were not required to file additional EEOC charges listing new allegations of retaliation.  As the Union has failed to identify any additional specific facts which might support this defense, the Court concludes that Plaintiffs are entitled to summary judgment on this issue.

### E.    The Union's Sixth and Seventh Affirmative Defenses

Plaintiffs move for summary judgment on the Union's sixth and seventh affirmative defenses.  Their sixth defense states that:

> Plaintiffs' claims are barred in whole or in part because plaintiffs failed to timely file a charge of discrimination and/or retaliation with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations.

Their seventh defense states that:

> Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

The Court concludes that Plaintiffs are entitled to summary judgment with respect to these two affirmative defenses as the Union has failed to identify any specific facts which might support these defenses.

### F.     The Union's Eighth, Tenth, and Twelfth Affirmative Defenses

Plaintiffs move for summary judgment on the Union's eighth, tenth, and twelfth affirmative defenses.  The eighth defense states that:

> Plaintiffs' claims are barred in whole or in part because Local 4420 has at all times acted in good faith toward plaintiffs.

The tenth defense states that:

> Plaintiffs' claims fail because Local 4420's actions were for legitimate business purposes and were based upon nondiscriminatory or nonretaliatory reasons.

The twelfth defense states that:

> Plaintiffs' claims for punitive damages are barred because all decisions made by Local 4420 with regard to plaintiffs were made in good faith, for legitimate business reasons, and were not in any manner willful or malicious.

The Court will deny Plaintiffs' motion with respect to these defenses as the Union presents evidence that it distributed the Legal Update for legitimate, non-retaliatory reasons (i.e., in order to inform its members about ongoing legal matters) and that it otherwise acted in good faith towards Plaintiffs.  Moreover, it presents evidence that it had an anti-discrimination policy in place as well as an internal grievance process which allowed

members to bring discrimination complaints.  For these reasons, the Union has presented sufficient evidence to raise a genuine issue of material fact as to whether it acted in good faith towards Plaintiffs.

### G.      The Union's Ninth Affirmative Defense

Plaintiffs move for summary judgment on the Union's ninth affirmative defense which states that:

> Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands, waiver, and/or estoppel.

*Inter alia,* there is some evidence that Booth and Brown themselves started the rumor of their proposed lawsuit against the Union *before* the Union distributed its Legal Updates Memo.  Thus, there is some evidence that they were responsible, in whole or in part, for the complained-of actions of their fellow union members. Thus, these equitable defenses may be applicable.  Accordingly, Plaintiffs are not entitled to summary judgment on this issue.

### H.      The Union's Eleventh Affirmative Defense

Plaintiffs move for summary judgment on the Union's eleventh affirmative defense which states that:

> Plaintiffs' claims fail because they have not been subjected to any action or omission by or on behalf of Local 4420 that has affected the compensation, terms, conditions, or privileges of their employment on the basis of their race, alienage, national origin or protected activity.

This alleged defense does not state a valid affirmative defense to a retaliation charge, under Title VII, §1981, and/or the FCRA.  To the extent the defense is attempting to deny that Plaintiffs suffered any adverse employment action, it is not a proper affirmative defense. The "adverse employment action" element is a part of the Plaintiffs' *prima facie* case for retaliation which Plaintiffs have the burden of proving at trial.  While the Union may certainly argue at trial that Plaintiffs fail to meet this element, the Union's eleventh defense is not a proper affirmative defense.  Accordingly, this Court determines that Plaintiffs are entitled to summary judgment with respect to this defense.

## I.      The Union's Thirteenth Affirmative Defense

Plaintiffs move for summary judgment on the Union's thirteenth affirmative defense which states that:

> Plaintiffs' are not entitled to any relief for any allegations of retaliation which they allege to have suffered which were not specifically referenced in their charge of retaliation.

As discussed in detail earlier in this Order, a Plaintiff need not file a new charge for a new allegation of misconduct if that misconduct is purportedly retaliatory conduct for the filing of an earlier EEOC charge.  Thus, this defense fails as a matter of law.  Accordingly, Plaintiffs are entitled to summary judgment on this issue.

## J.      The Union's Fourteenth Affirmative Defense

Plaintiffs move for summary judgment on the Union's fourteenth affirmative defense, which states that:

Plaintiffs' claims are barred in whole or in part because complained of conduct of Local 4420 constitutes union speech which is entitled to protection under First and Fourteenth Amendments to the United States Constitution, Article I, Sections 4 and 6 of the Florida Constitution, and Sections 447.301, Florida Statutes.

The Court concludes that Plaintiffs are entitled to summary judgment on this issue as the Court has already considered and denied this defense.

### K.      Mixed-Motive and After-Acquired Evidence Defenses

Plaintiffs point out that the Union failed to plead either a mixed-motive, or an after-acquired evidence defense.  Accordingly, such defenses are waived.  *See Frederick v. Kirby Tankships, Inc.,* 205 F.3d 1277, 1287  (11th Cir. 2000) ("failure to plead an affirmative defense results in waiver of that defense").

It is therefore **ORDERED AND ADJUDGED** that:

1.       Defendant Pasco County's Motion for Summary Judgment Against Plaintiff Anthony Booth (Dkt. 111) is hereby granted with respect to Booth's hostile work environment claims and denied with respect to Booth's retaliation claims.  Moreover, this Court concludes that Plaintiff Booth cannot raise a failure-to-promote claim at trial.

2.       Defendant Pasco County's Motion for Summary Judgment Against Plaintiff Jerry Brown (Dkt. 112) with respect to Brown's retaliation claims is hereby denied.  Moreover, this Court concludes that Plaintiff Brown cannot raise a failure-to-promote, and/or a hostile work environment claim at trial.

3.     Plaintiffs' Motion for Partial Judgment on the Pleadings Against Defendant Pasco County (Dkt 106) is hereby denied.  Plaintiffs' Motion for Partial Summary Judgment Against Defendant Pasco County Dkt (106) is hereby granted with respect to affirmative defenses 4, 13 and 15, and denied with respect to affirmative defenses 2,3,5,7,8,9,10,11, and 12.

4.     Defendant International Association of Firefighters Local 4420's Motion for Summary Judgment (Dkt. 109) is granted with respect to Plaintiff Brown's retaliation claim predicated on § 1981.  It is denied in all other respects.

5.     Plaintiffs' Motion for Partial Judgment on the Pleadings Against Defendant Local 4420 (Dkt. 102) is hereby denied.  Plaintiffs' Motion for Partial Summary Judgment Against Defendant Local 4420 (Dkt. 102) is hereby granted with respect to affirmative defenses 3, 5,6,7,11,13, and 14, and denied with respect to affirmative defenses 2,4,8,9,10, and 12. Moreover, the Court concludes that the Union has waived a "mixed motive" defense, and/or an "after-acquired evidence" defense.

**DONE** and **ORDERED** in Tampa, Florida on October 28, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2009\09-cv-2621.msj.111.wpd