**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANTHONY BOOTH and
JERRY BROWN,

        Plaintiffs,

                                Case No. 8:09-cv-02621-JSM-TBM

vs.

PASCO COUNTY, FLORIDA, and
INTERNATIONAL ASSOCIATION
OF FIREFIGHTERS LOCAL 4420,
d/b/a Pasco County Professional Firefighters,

        Defendants.

---

**PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES**
**AND LITIGATION EXPENSES WITH MEMORANDUM OF LAW IN SUPPORT**

    Plaintiffs Anthony Booth ("Booth") and Jerry Brown ("Brown") (collectively "Plaintiffs"), hereby submit their application for attorneys' fees and expenses pursuant to Fed. R. Civ. P. 54(d)(2), M.D. Fla. L.R. 4.18, 42 U.S.C. §1988, 42 U.S.C. 2000e-5 and Fla. Stat. §760.11 (2009) ("Fee Application"). In support thereof, Plaintiffs say:

    1.    This case was filed on November 25, 2009, and the trial commenced over two years later on January 23, 2012.

    2.    After a six-day trial, the jury found in favor of Plaintiffs against both Defendants as follows:

        A. On Booth's Title VII and FCRA retaliation claims against Pasco County, the jury awarded $10,000.00 in compensatory damages and $500.00 in back pay;

B. On Booth's Title VII, FCRA and 42 U.S.C. §1981 retaliation claims against the Union, the jury awarded $75,000.00 in compensatory damages and $8,000.00 in punitive damages;

C. On Brown's Title VII and FCRA retaliation claims against Pasco County, the jury awarded $12,000.00 in compensatory damages and $500.00 in back pay; and

D. On Brown's Title VII and FCRA retaliation claims against the Union, the jury awarded $75,000.00 in compensatory damages and $8,000.00 in punitive damages.

3.     On February 21, 2012, this Court vacated the jury verdict against Pasco County.

4.     On February 21, 2012, judgment was entered against the Union in accordance with the jury verdicts.

5.     Plaintiffs are therefore the "prevailing party" entitled to a reasonable award of attorneys' fees and expenses against the Union pursuant to Title VII, the FCRA and/or §1981. 42 U.S.C. §2000e-5(k); 42 U.S.C. §1988; Fla. Stat. §760.11(5) (2009).

6.     Accordingly, Plaintiffs seek an award of fees totaling $609,379.00 and an award of expenses totaling $6,832.04 against the Union.

7.     Plaintiffs' declarations and billing records in support of their request are attached as **Exhibits A - F** hereto. Plaintiffs' counsel made a good-faith effort to exclude any time that arguably should not be recovered against the Union. This was a very time-consuming effort that resulted in deducting more than 1,000 hours of time actually spent on this case, amounting to over $300,000 worth of fees. Counsel deducted any time that could be considered duplicative (for instance, due to changes in personnel); time that arguably

could be considered spent on issues related only to Pasco County (such as motions and responses to motions related solely to Pasco County); and other time that, using billing judgment, should arguably be deducted or reduced for any reason.

8.     In addition, Plaintiffs are submitting expert declarations in support of their fee application which are attached hereto as **Exhibits G and H.**

## MEMORANDUM OF LAW

### I.     Law Applicable to Civil Rights Fee Applications.

Under Title VII, §1981 and the FCRA, the Court may award a prevailing plaintiff reasonable attorneys' fees, including the litigation expenses incurred. 42 U.S.C. §2000e-5(k); 42 U.S.C. §1988; Fla. Stat. §760.11(5) (2009).[1] "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (citations omitted). Plaintiffs are clearly the prevailing parties in this case, having obtained a substantial retaliation verdict against the Union, including an award of punitive damages. Id.

The overriding purpose of awarding fees to a prevailing plaintiff is to encourage private enforcement of civil rights laws. E.g., Mayson v. Pierce, 806 F.2d 1556, 1562 (11th Cir. 1987). As the Senate explained when enacting the fee provision:

> Civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain.
> In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private

---

[1] The legal standard applicable to an award of attorneys' fees under all three statutes is the same.

> citizens are to be able to assert their civil rights, and if those who violate the
> Nation's fundamental laws are not to proceed with impunity, then citizens must
> have the opportunity to recover what it costs them to vindicate these rights in
> court.

S. Rep. No. 95-1011, 94th Cong., 2d Sess., 2 (1976), reprinted in 1976 U.S.C.C.A.N. at

5910. "It is intended that the amount of fees awarded ... be governed by the same standards

which prevail in other types of equally complex Federal litigation, such as antitrust cases[,]

and not be reduced because the rights involved may be nonpecuniary in nature." Hensley,

461 U.S. at 430 n. 4 (quoting the Senate Report). Ultimately, "[i]n computing the fee,

counsel for prevailing parties should be paid, as is traditional with attorneys compensated by

a fee-paying client, 'for all time reasonably expended on a matter.'" Hensley, 461 U.S. at 430

(citations omitted).

The starting point for determining a reasonable fee is the lodestar, which is calculated

by multiplying the hours reasonably expended by a reasonable hourly rate. Hensley, 461 U.S.

at 433; Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292 (11th Cir.

1988). "A reasonable hourly rate is the prevailing market rate in the relevant legal

community for similar services by lawyers of reasonably comparable skills, experience and

reputation." Norman, 836 F.2d at 1299 (fee applicants meet their burden by producing either

direct evidence of rates charged under similar circumstances or opinion evidence of

reasonable rates); Martin v. University of South Alabama, 911 F.2d 604, 610 (11th Cir.

1990) (noting that the "going rate" in the community is "the most critical factor determining

a reasonable fee").[2]

---

[2] The Court should award fees for the entire litigation at the attorney's current market rate in order to account
for the delay in payment of fees to the attorney during the litigation. Norman, 836 F.2d at 1302 ("In this circuit,

The next step is to determine the "hours reasonably expended," which is defined as "billable hours" or "work that would be paid for by a reasonable client of means seriously intent on vindicating the rights in issue." Perkins v. Mobile Housing Board, 847 F.2d 735, 738 (11th Cir. 1988). The hours may be reduced if Plaintiffs' documentation of hours is inadequate, or if there are hours that were not "reasonably expended." Hensley, 461 U.S. at 433. While the fee applicant bears the burden of documenting the appropriate hours, any objections thereto must be equally specific and precise. Duckworth v. Whisenant, 97 F.3d 1393, 1397 (11th Cir. 1996); Norman, 836 F.2d at 1301, 1303. "Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and therefore, it must appear that the time claimed is obviously and convincingly excessive under the circumstances" to warrant any deductions. Perkins, 847 F.2d at 738. Further, a district judge may not reduce a fee award because of his or her "common sense" and experience as a lawyer and judge without identifying the hours disallowed and explaining why an award for these hours would be improper. Carmichael v. Birmingham Saw Works, 814 F.2d 590, 592 (11th Cir. 1987).

After calculating the lodestar fee, the district court may consider other factors such as the "results obtained" to determine whether to adjust the fee upward or downward. Hensley, 461 U.S. at 434. Where the plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief, then two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?

---

where there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates.") (citing Missouri v. Jenkins, 491 U.S. 274, 283-84 (1989)).

Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? Id. The Court may also consider the other factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), though many of those factors[3] usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate. Id. at 434 n. 9; Norman, 836 F.2d at 1299 (noting that the Johnson factors "might be considered in terms of their influence on the lodestar amount").

Each of these issues is addressed in turn below.

## II.   Analysis.

### A.   Reasonable Hourly Rates for Plaintiffs' Counsel.

The Law Offices of Cynthia N. Sass, P.A. ("Firm"), seek a reasonable hourly rate of $350.00 per hour for lead trial counsel, Attorney Kendra Presswood (licensed in 1992). Kathleen D. Kirwin (licensed in 1985), who acted as trial co-counsel, likewise seeks a reasonable hourly rate of $350.00 per hour. Prior to the trial, Attorneys Constantine W. Papas and Yvette D. Everhart primarily worked on the case.[4] (See **Exhibit A**). On October 31, 2011, Mr. Papas left the Firm, requiring designation of new lead trial counsel. The Firm

---

[3] These factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Dowdell v. City of Apopka, Florida, 698 F.2d 1181, 1188 (11th Cir.1983) (summarizing the factors set forth in Johnson).

[4] Attorney Everhart did not assist with the case from April 7, 2010 through April 18, 2010 due to her wedding nor did she assist from March 27, 2011 through June 27, 2011 due to maternity leave. Attorney Papas was the attorney primarily responsible for the case up until he left the firm.

seeks the reasonable rates of $350.00 per hour for Mr. Papas and $175.00 for Ms. Everhart.[5]

In addition, as reflected in the attached billing records, the following timekeepers

periodically assisted with the case when needed during the past two years the Firm

prosecuted this case:

- Attorney Cynthia N. Sass, licensed in 1987, $375/hour
- Attorney Janet E. Wise, licensed in 1992, $350/hour
- Attorney James W. Jones, licensed in 2001, $250/hour
- Certified Paralegal Jana Olney, $115/hour
- Paralegals Elaine Glotz and Candy Stead, $90/hour
- A law clerk, $130/hour and case clerks, $50/hour[6]

In support of each of these rates, Plaintiffs submit declarations demonstrating that

these are the normal hourly rates charged to hourly clients, as well as describing counsels'

qualifications and experience supporting these rates. (See **Exhibits C – F**). Norman, 836

F.2d at 1299. In addition, Plaintiffs submit expert testimony supporting these rates, namely:

The *Affidavit of Phyllis J. Towzey* (attorney primarily representing employers in employment

---

[5] Notably, no reduction for total hours is permitted simply because a plaintiff had more than one attorney representing him during his case. Norman, 836 F.2d at 1302 ("There is nothing inherently unreasonable about a client's having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer."). As stated in Johnson v. Univ. of Alabama, 706 F.2d 1205, 1208 (11th Cir. 1983):

>The retaining of multiple attorneys in a significant, lengthy employment discrimination case such as this one is understandable and not a ground for reducing the hours claimed. The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work..... An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.

Thus, a reduction for duplication of hours is only warranted if the attorneys are "**unreasonably** doing the *same* work." Id. (Emphasis in original). In this case, the use of multiple attorneys was reasonable and necessary given the scope of the work and changes in firm personnel. A comparison of the time spent by Plaintiffs' counsel shows a division of work that resulted in no duplication, as any duplicative efforts have already been deducted.

[6] Reasonable attorneys' fees include work performed by paralegals and law clerks. Missouri v. Jenkins, 491 U.S. 274, 287-289 (1989).

law matters) and the *Sworn Declaration of Matthew K. Fenton* (attorney primarily representing employees in employment law matters). (**Exhibits G and H**, respectively).

Further, the following fee awards show that the rates requested are reasonable. For example, the rates sought for Ms. Presswood ($350.00 per hour/20 years' experience) and Ms. Kirwin ($350.00 per hour/27 years' experience) are consistent with numerous fee awards for lawyers with similar experience, abilities and skill by courts and other tribunals within the geographic area of the Middle District of Florida. See e.g., Wilhoit v. White Eagle Restaurant, LLC, Case No. 4:09-cv-206 RH/WCS, Doc. 44 (N.D. Fla. 2010) (awarding $400.00 per hour to attorney with 22 years of experience and $300.00 per hour to attorney with 11 years of experience in Title VII action); Loos v. Club Paris, LLC, Case No. 6:08-cv-534-Orl-35GJK, 2010 WL 3221920 (M.D. Fla. 2010) (awarding $350.00 per hour to attorney with 14 years of experience in Title VII action); Fielder v. Shinseki, Case No. 8:07-cv-1524-T-TBM, 2010 WL 1708621 (M.D. Fla. 2010) (awarding $350.00 per hour to attorneys with 20 years' experience in Title VII action); Gonzalez v. Akal Sec., Inc., Case No. 8:08-cv-2270-T-TBM, 2010 WL 2557688 (M.D. Fla. 2010) (awarding seven-year attorney $225.00 per hour and paralegal $110.00 per hour in "garden variety" Title VII discrimination and retaliation case that settled before trial); Hayden v. City of Orlando, Case No. 6:05-cv-853-Orl-22GJK, 2008 WL 3889596 (M.D. Fla. 2008) (awarding $325.00 per hour to attorney with 13 years of experience in Title VII action); Fierro v. Beaches Sandbar, Inc., Case No. 6:07-cv-809-Orl-22DAB, 2007 WL 4247793 (M.D. Fla. 2007) (awarding $300.00 per hour to attorney with 14 years of specialized experience and $190.00 per hour to attorney with four years of experience); Wyatt v. Merrill Lynch, Arbitration Panel, (2007) (**awarding**

**$350.00 per hour to Kendra Presswood, who at the time had 15 years of experience, and**

**$300.00 per hour to Kathleen Kirwin, who at that time had 22 years of experience)**;

EEOC v. Glass, Case No. 4:04-cv-391-SPM-AK (N.D. Fla. 2006) (awarding $350.00 per

hour to attorney with 15 years of experience and $250.00 per hour to attorney with five years

of experience). In sum, the hourly rates sought are entirely reasonable.

**B.      Hours Reasonably Expended by Plaintiffs' Counsel.**

The total number of hours expended by Plaintiffs' counsel on this case were 3,228.

Plaintiffs seek reimbursement for 2,172.20 of those hours. All time was kept

contemporaneously on a computerized time-keeping program and each entry provides

detailed descriptions of the work completed, the date the work was completed, and the hours

expended. (See **Exhibits C and F**). Prior to submitting this application, counsel exercised

appropriate billing judgment[7] to ensure Plaintiffs are not seeking reimbursement for time that

would not properly be billed to a fee-paying client and to deduct for time devoted only to

issues related to Pasco County and/or issues that were not ultimately pursued. For example,

counsel reduced and/or deleted any entries that could be considered duplicative due to the

change in lead trial counsel immediately prior to trial. Counsel also deleted time spent on

matters not pursued or matters dismissed early in the litigation process. Likewise, counsel

deleted time spent researching and/or responding to Pasco County's motions for summary

judgment and/or motions to strike. As such, no further reduction is in the hours is needed or

warranted.

---

7 Attorney Sass exercised this billing judgment as to the records of the Firm attached as **Exhibit A**.

In addition to the attached declarations attesting that the hours spent on this case were necessary to prosecute this case, as well as the experts' affidavits attesting that the number of hours sought is reasonable, the lengthy record in the case amply demonstrates the reasonableness of the hours submitted by Plaintiffs. This was a hard-fought case that spanned two years of heated litigation. As the Supreme Court has recognized, discrimination and retaliation claims are complex litigation matters. This case, in particular, was factually complex given that it involved two plaintiffs, two defendants, and that the retaliatory actions and harassment at issue spanned several years. The complexity of the factual background necessitated extensive discovery, trial preparation and trial time, not to mention the myriad of post-trial motions that are still ongoing at this time.

There were many people who had discoverable knowledge concerning the case, yet the parties limited the discovery to eight depositions, although several of them were lengthy. All the depositions were necessary for the prosecution of the case, as was the written discovery exchanged. Although Plaintiffs propounded written discovery on the Union, most of the pertinent documents were in the possession of Pasco County. Thus, Plaintiffs and the Union benefited from the discovery exchanged between Plaintiffs and Pasco County, which included over 7,000 production documents, containing evidence relevant to the claims against the Union as well as the claims against Pasco County.

This case was also motion-intensive. For example, the Union filed two motions to dismiss, requested a stay of discovery while awaiting disposition of the motions to dismiss, sought an improper advisory opinion that bore no relation to the case, and filed summary judgment motions totaling 315 pages. Moreover, the Union filed a motion to sever, which

Plaintiffs expended time drafting a response to before the Court denied the motion *sua sponte*, as well as a motion in limine addressing several different issues. Of course, all the motions required Plaintiffs' counsel to spend significant time researching and preparing responsive memoranda. In addition, Plaintiffs filed motions for partial summary judgment that successfully dismissed half of the Union's 12 affirmative defenses.

As the court stated in <u>McGowan v. King, Inc.</u>, 661 F.2d 48, 51 (5th Cir 1981), "although defendants are not required to yield an inch or to pay a dime not due, they may by militant resistance increase the exertions required of their opponents and thus, if unsuccessful, be required to bear that cost." <u>See also</u> <u>Wolf v. Frank</u>, 555 F.2d 1213, 1217 (5th Cir. 1977) ("Obviously, the more stubborn the opposition the more time would be required [by plaintiff's attorneys]"); <u>Mitroff v. Xomox Corp.</u>, 631 F.Supp. 25, 28 (S.D. Ohio 1985) (holding defendant who requires plaintiff to expend "substantial time" cannot complain at the time expended). Given the complexity of Plaintiffs' claims, the large number of witnesses with relevant information, the large number of relevant documents exchanged between the parties, and the hard-fought litigation of this case, Plaintiffs have established that the number of hours expended on their claims over a period of nearly two years is reasonable. As such, all the hours should be reimbursed.

### C.   Adjustment to the Lodestar Amount

As demonstrated above, the lodestar amount of Plaintiffs' fees is $609,379.00. The Court may next consider whether to adjust the fee upward or downward. <u>Hensley</u>, 461 U.S. at 434. Because the Plaintiffs did not succeed on all of their claims for relief as a result of the Court's Order setting aside the verdicts against Pasco County, the Court should consider the

other factors discussed below to determine wheter any adjustment to the lodestar is warranted. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974).

### 1. Plaintiffs did not fail to prevail on claims that were unrelated to the claims on which they succeeded.

The first question is whether the Plaintiffs failed to prevail on claims that were unrelated to the claims on which they succeeded Johnson, 488 F.2d at 717-719. If the Plaintiffs brought distinctly different claims for relief based on different facts and legal theories, then they may recover for only the successful claims. Hensley, 461 U.S. at 434-45. However, if the Plaintiffs' claims for relief involved a common core of facts or were based on related legal theories, "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Hensley, 461 U.S. at 435. "Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. Although a court may exclude time spent litigating discrete and unsuccessful claims, where non-fee claims have a common nucleus of operative fact with fee-generating claims, prevailing party fees should be awarded for all the claims. This is especially so where, as here, the work on the various claims cannot be distinguished. Hensley, 461 U.S. 424. This Court should only reduce fees with respect to claims that *bore no relation* to the relief obtained. Id.

As this Court recognized in denying the Union's motion to bifurcate, which sought separate trials against the Union and Pasco County, the legal and factual issues against both

Defendants were not separate and distinct.[8] Plaintiffs' claims for retaliation against the Union and Pasco County involved a common core of facts and were based on related legal theories. Indeed, Plaintiffs' retaliation claims against Pasco County were so intertwined with Plaintiffs' retaliation claims against the Union that it is nearly impossible to distinguish the work performed. Hensley, 461 U.S. 424.

To begin with, the retaliation claims against the Union grew out of Plaintiffs' underlying discrimination complaints against Pasco County. When Pasco County transferred both Plaintiffs after they filed their original discrimination grievances, Plaintiffs sought the Union's assistance with fighting the transfers because Plaintiffs felt they were retaliatory. The Union's refusal to assist is the reason Plaintiffs ended up filing EEOC charges against the Union as well as Pasco County in April 2008. It was those EEOC charges that led the Union to disseminate its Legal Updates Memo, which Pasco County distributed and approved, causing Plaintiffs to become social pariahs among their supervisors and co-workers, most (if not all) of whom were union members.

Similarly, although Booth did not ultimately prevail on his discrimination claim, as the trial amply demonstrated, Plaintiffs discrimination claims had a common nucleus of operative fact with and were directly related to their retaliation claims. But for Plaintiffs filing charges of discrimination, the Union would not have drafted and distributed the Legal Updates Memo, which instigated the resulting reprisal against Plaintiffs by their co-workers

---

[8] E.g., McDaniel v. Anheuser-Busch, Inc., 987 F.2d 298, 305 (5th Cir. 1993) ("There is an important limitation on ordering a separate trial of issues under Rule 42(b): the issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice."); Cruz v. Robert Abbey, Inc., 778 F. Supp. 605 (E.D. N.Y. 1991) (granting plaintiffs' motion to consolidate employees' actions against employer and union where claim against local union for breach of duty of fair representation was inextricably interdependent with claim against employer parent company and subsidiary for breach of collective bargaining agreement so that consolidation would economize both judicial resources and resources of parties).

and fellow union members. Moreover, Plaintiffs had to be prepared to prove that they had a reasonable good-faith belief for their discrimination complaints to establish protected activity in support of their retaliation claims. (See Dkt. 129). Even after stipulating that the EEOC charges were protected activity for purposes of the trial, the Union insisted that it still wanted to show the EEOC charges were "frivolous" to prove that the statement it made to that effect in the Legal Updates Memo was "true." Thus, no additional fees were incurred with respect to the discrimination claims except to the extent necessitated by the Defendants' claiming that there was no good faith basis for Plaintiffs' protected activity, and then by the Union's trial strategy of continuing to claim the original EEOC charges were frivolous - even after stipulating that they constituted protected activity. In short, the discrimination claims were not discrete; they were interrelated with the retaliation claims. Moreover, to the extent that the discrimination claims could be separated from the retaliation claims, Plaintiffs' counsel already deducted that time before seeking reimbursement for their fees.

To summarize, the facts related to both Plaintiffs and both Defendants were intertwined and the evidence against both Defendants was all interrelated. Likewise, the legal issues against both Defendants were the same, as reflected in the fact that the Court gave virtually identical jury instructions for the claims against both Defendants. Thus, for the same reason bifurcation of the the trial against the two Defendants was not justified,[9] Plaintiffs'

---

[9] See, e.g., Young v. City of Augusta, Ga., 59 F.3d 1160 (11th Cir. 1995) (stating magistrate judge incorrectly found that there were no common issues of law or fact in prisoners' civil rights actions alleging jail officials were deliberately indifferent to psychiatric treatment needs of prisoners and that cases could have been consolidated even though each prisoner alleged different set of facts concerning his or her particular medical needs and responses made by jail employees); EEOC v. HBE Corp., 135 F.3d 543 (8th Cir. 1998) (affirming consolidation of African American manager's race discrimination action with action of personnel director who alleged that he was terminated for refusing to discharge manager, as both plaintiffs sought to present similar evidence about a climate of racial hostility and the events surrounding the manager's discharge which was

may recover fees related to both the Union and Pasco County even though the Court ultimately entered judgment against only the Union. Hensley, 461 U.S. at 434-45. Plaintiffs did not bring distinctly different claims for relief based on different facts and legal theories. Hensley, 461 U.S. at 434-45. Plaintiffs' claims for relief against both Defendants involved a common core of facts and were based on the same legal theories. Thus, nearly all of counsel's time was devoted generally to the litigation as a whole and should be awarded. Hensley, 461 U.S. at 435. Finally, to the extent any of the time arguably was not related, Plaintiffs' counsel already deducted that time.

> **2.      Plaintiffs achieved a level of success that makes the hours reasonably expended a satisfactory basis for a fee award.**

The second question for consideration is whether the Plaintiffs achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. Johnson, 488 F.2d at 717-719. "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Id. at 441. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." Hensley, 461 U.S. at 435. On the other hand, if a plaintiff has achieved only partial or limited success, the lodestar calculation may be an excessive amount warranting a reduction. Id. at 436.

---

relevant to motive); Liegey v. Ellen Figg, Inc., Case No. 02 Civ. 1492(DC), 03 Civ. 0322(DC), 2003 WL 21688242 (S.D. N.Y. 2003) (granting consolidation of separate hostile work environment cases even though the plaintiffs' worked for the employer at different times where their cases involved common issues of law and similar facts and relied on the same witnesses).

The Plaintiffs in this case succeeded on their primary claim in the case, namely, that the Legal Updates Memo was retaliatory. This is true regardless of the fact that jury held the Union but not Pasco County responsible for the Memo. Moreover, Plaintiffs achieved an excellent result, particularly for a case in which there was no "ultimate" employment action taken resulting in a loss of pay. The jury awarded significant compensatory damages as well as punitive damages to both Plaintiffs.

Similarly, the fact that the jury did not find in the Plaintiffs' favor by listing every adverse action alleged in the verdict form is not a basis to reduced Plaintiffs' fees. As this Court recognized previously, retaliation claims, like hostile work environment claims, are single causes of actions, not multiple causes of action based on the number of adverse actions alleged. Vance v. Southern Bell T&T Co., 863 F.2d 1503, 1510-11 (11th Cir. 1989) (stating a retaliation claim is "a single cause of action rather than a sum total of a number of mutually distinct causes of action to be judged each on its own merits."), overruled on other grounds Patterson v. McLean Cr. Un., 491 U.S. 164 (1989); Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998) (holding, even if certain actions alone would not be sufficient to constitute retaliation, when considered collectively, they may); EEOC v. Reichold Chem., Inc., 988 F. 2d 1564, 1572 (11th Cir. 1993) (stating that the cumulative effect of employment actions established an adverse action). As such, Plaintiffs asserted and pursued all of the alleged adverse actions as a single cause of action for retaliation against both Defendants. (See Dkt. 93, ¶¶ Counts IX - XIX). The jury found for Plaintiffs and, thus, Plaintiffs prevailed on their *single* retaliation cause of action despite the fact that the jury did not list all the adverse actions it might have on the fill-in-the-blank verdict form. As the

Court knows, the Legal Updates Memo was the primary adverse action at issue throughout the litigation of this case. Thus, the jury found in Plaintiffs' favor on that core issue, and the only claim Plaintiffs took to trial: retaliation.

Given that many plaintiffs in Title VII, 42 U.S.C. §1981 and FCRA discrimination and retaliation cases never get past the summary judgment stage, the result in this case is, in short, excellent. And, as discussed above, the fact that the Court granted judgment in favor of Pasco County notwithstanding the jury's verdict is no reason to reduce the fee award because all the claims against Pasco County and the Union were interrelated. The result of the Court's ruling is that the Union is left solely responsible for the fees rather than the Union and Pasco County being jointly responsible, but it is not a basis to reduce the fees Plaintiffs are entitled to recover. See Fox v. Vice, 131 S. Ct. 2205, 2213 (2011) (fee-shifting in civil rights case both reimburses the plaintiff for what it cost to vindicate his rights and holds the violator of federal law accountable) (citations omitted). As the Supreme Court recently stated, in the real world of litigation, there are often multiple claims and some claims succeed while others do not, but civil rights plaintiffs are entitled to recover all their fees as long as the claims were related because it is winning a claim – not all of them – that really matters:

> Given this reality, we have made clear that plaintiffs may receive fees under § 1988 even if they are not victorious on every claim. A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes. That "result is what matters," we explained in *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983): A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if "the plaintiff failed to prevail on every contention." *Ibid.* The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief: Such work "cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Ibid.* (internal quotation marks omitted). But the presence of these

> unsuccessful claims does not immunize a defendant against paying for the attorney's fees that the plaintiff reasonably incurred in remedying a breach of his civil rights.

Fox, 131 S. Ct. at 2214. Thus, a plaintiff may receive fees for all work relating to the accomplishment of that result, even if "the plaintiff failed to prevail on every contention raised." Fox, 131 S. Ct. at 2215 n. 3 (quoting Hensley, 461 U.S. at 435).

Similarly, a civil rights plaintiff may recover his fees even where the monetary value of his claims is minimal because the vindication of civil rights serves the public interest. Thus, the value of success is far more than the monetary value. Riverside v. Rivera, 477 U.S. 561, 572 (1986) ("[A] civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms."). The value to the public interest – not just the amount of the recovery – must be considered in determining the reasonableness fees incurred in conducting the litigation. Id.

In this case, the jury awarded $75,000 in compensatory damages to each Plaintiff, which is a significant award in a civil rights case where Plaintiffs were not terminated or even demoted. Moreover, the jury awarded $8,000 in punitive damages to each Plaintiff, which is an excellent result given the fact that punitive damages are rarely awarded. More importantly to Plaintiffs, their claims that they were retaliated against were vindicated and the public interest in deterring unlawful retaliation served. Thus, both the results obtained and the amount involved support an increase rather than any decrease in the fee award Plaintiffs should receive.

In sum, the significance of the overall relief obtained by the Plaintiffs in relation to the hours reasonably expended on the litigation does not warrant any reduction in the fees

sought. Id. Even if Pasco County had not been a party to the action, virtually all of the discovery and work related to the prosecution of this case would have been necessary. Virtually all of the retaliatory actions, threats and name-calling suffered by Plaintiffs at the hands of their co-workers and supervisors, including the refusal to swap overtime or shifts with Plaintiffs, were caused by the Legal Updates Memo drafted by the Union President and then approved and disseminated by the Pasco County Fire Chief. When it was all said and done, there was one ultimate issue of fact for the jury to decide and it was the identical question for both Defendants, namely: whether one or both Defendants retaliated against Plaintiffs because they engaged in protected activity. The time Plaintiffs' counsel had to spend prosecuting the case was no more nor less regardless of which Defendant the jury felt was responsible. Since virtually all the same time would have been spent throughout the litigation even if Pasco County had not been a Defendant, there is no reason to reduce Plaintiffs' fees because they obtained relief only against the Union. That relief was nonetheless substantial and well worth the time and expense put into the case.

Lastly, Plaintiffs' counsel already accounted for any time that could be attributed solely to the claims against Pasco County, using billing judgment to delete those time entries before submitting this request for fees and expenses. For example, any motions or other issues related solely to Pasco County, such as responding to Pasco County's motions for summary judgment and/or motion to strike Plaintiffs' damages and time expended preparing for the temporary injunction hearing involving only Pasco County were deleted and deducted from the attorney fees' bills. For all of the above reasons, no further reduction is warranted.

3.      The <u>Johnson</u> Factors.

All of the pertinent <u>Johnson</u> factors warrant an upward adjustment to the lodestar amount sought by Plaintiffs' counsel.

a.      **Time and Labor Required**

As discussed above in the section on the reasonable number of hours expended in this case, this was a hard-fought case in which the Union resisted Plaintiffs' claims at every turn. The time and labor required of Plaintiffs' counsel was significant and spanned over two years. As such, this factor weighs in favor of an upward adjustment to Plaintiffs' fees.

b.      **Novelty and Difficulty of Questions**

As noted above, the law relating to employment discrimination and retaliation claims is highly specialized in nature and presents often complex questions of fact and law. This case was no exception. As discussed above, this case involved a complex factual scenario spanning several years of retaliatory actions and harassment. The case also presented a number of difficult, if not novel, questions under Title VII, the FCRA and §1981, including, among others, the application of the "mixed motive" defense to Title VII and FCRA retaliation claims, whether the Union's actions are protected by the First Amendment, and whether the <u>Faragher</u> defense applies to retaliation claims. As such, this factor weighs in favor of an upward adjustment to Plaintiffs' fees.

c.      **Skill Required**

Given the foregoing factual and legal complexity of this case, superior litigation skills were required to adequately represent Plaintiffs. In fact, once Attorney Presswood started preparing the case for trial, it became apparent that the assistance of a co-counsel with

considerable trial experience would be needed to successfully present the case to a jury. As such, she reached out to Attorney Kirwin, who agreed to assist as co-counsel. In short, the skill required to prevail in this case was high; thus, this factor weighs in favor of an upward adjustment to Plaintiffs' fees.

### d.      Preclusion of Other Employment

When Plaintiffs' counsel initially agreed to represent Plaintiffs, it was not expected that the case would be ongoing for more than two years. The intransigence of both Defendants resulted in the Firm having to devote a substantial number of attorney hours to this case over a protracted period of time. As reflected by the attached declaration of Attorney Sass (**Exhibit C**), her firm accepts only a limited number of cases, as only a select number can be competently handled. Thus, acceptance of the instant matter necessarily precluded the Firm's attorneys from accepting and/or working on other cases. Additionally, Attorney Kirwin had to set aside her caseload to prepare for and assist with the trial of this case. (**Exhibit F**).

### e.      Customary Fee and Whether Fixed or Contingent

The customary hourly rates of the timekeepers involved in this matter are set forth in the attached declarations. In addition, the expert declarations establish that the fees sought by Plaintiffs' counsel are customary and reasonable in this area of law and jurisdiction. However, as is the case with most plaintiffs' employment cases, the Plaintiffs in this case were not able to afford paying hourly rates. As such, the fees were contingent upon prevailing. Thus, this factor also weighs in favor of an upward adjustment to account for the risk of nonpayment as well as the lack of payment for counsels' services for the past two

years. <u>Jones v. Diamond</u>, 636 F.2d 1364, 1382 (5th Cir. 1981) (*en banc*) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result. This is neither less nor more appropriate in civil rights litigation than in personal injury cases.").

### f.      Results Obtained

As discussed above, Plaintiffs achieved an excellent result despite the fact that the case was vigorously defended from its inception through the trial by Defendants with far greater means to litigate. Plaintiffs prevailed on the only claims they pursued through trial, the retaliation claims, and were awarded significant damages despite the fact that they still have their jobs.

### g.      Experience, Reputation and Ability of Attorneys

The reputation and credentials of the attorneys that worked on this case are set forth at length in the declarations of Attorney Sass, Attorney Presswood, Attorney Everhart and Attorney Kirwin. (**Exhibit C - F**). This factor, too, weighs in favor of an upward adjustment based upon the considerable experience, abilities and reputations of Plaintiffs' attorneys.

### h.      Undesirability of Case

Given the factual complexity of Plaintiffs' claims, the fact that they were unable to pay hourly for representation, and that the actual monetary losses were minimal, Plaintiffs' case can reasonably be classified as "undesirable" at its inception. Employment discrimination and retaliation cases are often declined if the plaintiff does not have significant damages in the form of lost wages because, without lost wages, the attorney is faced with litigating a case for years with only the hope that a jury will see fit to award

substantial damages for emotional distress despite the lack of any "hard" damages, or that a claim for punitive damages will be successful. This is particularly true where, as here, there is no "ultimate" employment action, such as a termination or demotion that a jury can easily comprehend. Especially in these difficult economic times, it is hard to convince a jury that plaintiffs who still have a job and make the same amount of money should be compensated for unlawful retaliation. Against better judgment, counsel took the case out of empathy for the Plaintiffs' situation and, against all odds, prevailed. As such, this factor also weighs in favor of an upward adjustment.

   **i.**  **Length of Professional Relationship with Clients**

   Plaintiffs retained the Law Offices of Cynthia N. Sass, P.A. solely to prosecute this case, which the Firm has now done for over two years. Although hourly rates for defense counsel are often reduced to take into consideration the competition of defense firms as well as the possibility of additional business from the client, no such consideration is present with regard to Plaintiffs' counsel. As such, this factor also weighs in favor of an upward adjustment, if any.

   **j.**  **Awards in Similar Cases**

   The fees sought in the case are consistent with similar cases. Indeed, the time and expense necessary to successfully prosecute employment discrimination and retaliation cases often exceeds the monetary recovery. See, e.g., McKenzie v. Copper, Levins and Pastko, Inc., 990 F.2d 1183, 1185 n.4 (11th Cir. 1993) (affirming fee award of $102,911.55 based upon plaintiff's recovery of only $9,000 in Title VII sexual harassment case); Davis v. Locke, 936 F.2d 1208 (11th Cir. 1991) (affirming fee award of $62,643.20 where jury verdict

was $1,750); see also Geowaste of Georgia, Inc. v. Tanner, 875 F .Supp. 830, 833 n.1 (M.D.

Ga. 1995) (accumulating cases within the Eleventh Circuit that stand for the proposition that

"the need to attract competent counsel" is an appropriate factor when determining the amount

of fees to award).  As the Eleventh Circuit explained, a fee award is not properly based upon

the monetary recovery in a civil rights case:

> the rights vindicated cannot be valued solely in monetary terms... monetary
> awards understate the real stakes, the amount of fees awarded (should) be
> governed by the same standards which prevail in other types of equally
> complex federal litigation, such as anti-trust cases and not be reduced
> because the rights involved may be non-pecuniary in nature...damage
> awards may not fully reflect the public benefits of plaintiffs' verdicts in civil
> rights litigation.

McKenzie, 990 F.2d at 1185 n.4.

### D.    Plaintiffs' Litigation Expenses Necessarily Incurred in the Action.

In addition to attorneys' fees, Plaintiffs seek an award of litigation expenses totaling

$6,832.04 as the prevailing parties to this action. Plaintiffs filed declarations and records in

support of this request. (See **Exhibits B, C and D**). Title VII, the FCRA and §1981 allow for

the recovery of litigation expenses incurred as part of the attorneys' fee award, even though

the expenses would not otherwise qualify as taxable costs. 42 U.S.C.§2000e-5(k); 42 U.S.C.

§1988; Fla. Stat. 760.11(5); see, e.g., Missouri v. Jenkins, 491 U.S. 274, 281-84 (1989)

(expenses incurred in litigation of this nature are intertwined with a reasonable attorney fee);

accord Fielder v. Shinseki, Case No. 8:07-cv-1524-T-TBM, 2010 WL 1708621 (M.D. Fla.

2010) (citing Dowdell v. City of Apopka, Fla., 698 F.2d 1181, 1992 (11th Cir. 1983)

(allowing recovery of non-statutory costs as part of the overall fee in a Title VII action)). All

reasonable expenses incurred during the litigation, with the exception of routine office

overhead, are recoverable as litigation expenses. <u>Dowdell v. City of Apopka,</u> 698 F.2d 1181, 1190-92 (11th Cir. 1983). A prevailing civil rights litigant is entitled to an award of reasonable costs and expenses as a matter of course and reductions, if any, should be made only where the expenses sought are unreasonable. <u>Dowdell,</u> 698 F.2d at 1191 (expenses are "liberally" dispensed as appropriate to the specific litigation and "even relatively large or unusual costs may be taxed when they are reasonably incurred."). Accordingly, Plaintiffs are entitled to recover the full amount of their expenses.

### CERTIFICATE OF LOCAL RULE 3.01(G) GOOD FAITH CONFERRAL

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 3.01(g), the undersigned certify that they conferred in good faith with opposing counsel and opposing counsel objects to the relief sought.

### CONCLUSION

Based upon the foregoing, Plaintiffs request that the Court enter judgment against Defendants for their attorneys' fees in the amount of $609,379.00 and their costs in the amount of $6,832.04.

Respectfully Submitted,

s/Kendra D. Presswood
Kendra D. Presswood, Esquire
Florida Bar No. 0935001
Law Offices of Cynthia N. Sass, P.A.
601 West Dr. Martin Luther King, Jr. Blvd
Tampa, Florida 33603
Telephone: (813) 251-5599
Facsimile: (813) 259-9797

On Behalf of the Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 6, 2012, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of electronic

filing to:

Tracey K. Jaensch, Esquire, at tjaensch@fordharrison.com
Dennis A. Creed, III, Esquire, at dcreed@fordharrison.com
Andy Ingram, Esquire, at aingram@laborattorneys.org
Paul A. Donnelly, Esquire, at pdonnelly@laborattorneys.org
Laura A. Gross, Esquire, at lgross@laborattorneys.org
Jung Yoon, Esquire, at jyoon@laborattorneys.org

s/Kendra D. Presswood
Attorney