**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANTHONY BOOTH and
JERRY BROWN,

       Plaintiffs,

v.                                         Case No: 8:09-cv-2621-T-30TBM

PASCO COUNTY, FLORIDA and
INTERNATIONAL ASSOCIATION OF
FIREFIGHTERS LOCAL 4420,

       Defendants.

_____

## <u>ORDER</u>

THIS CAUSE comes before the Court upon the Plaintiffs' Application for Attorneys' Fees and Litigation Expenses with Memorandum of Law in Support (Dkt. #303), Plaintiffs' Counsel Kathleen D. Kirwin's Application for Attorneys' Fees against Defendant Pasco County, Florida and the International Association of Firefighters Local 4420 with Memorandum of Law in Support (Dkt. #368), Plaintiffs' Application for Attorneys' Fees against Pasco County and Memorandum of Law in Support (Dkt. #372), Defendant International Association of Firefighters Local 4420's Response in Opposition to Plaintiffs' Motions for Attorneys' Fees (Dkt. #390), Defendant Pasco County's Response in Opposition to Plaintiffs' Applications for Attorneys' Fees (Dkt. #384), Plaintiffs' Amended Bill of Costs (Dkt. # 361), Defendant Pasco County's Opposition to

Plaintiffs' Bill of Costs (Dkt. #367) and Defendant International Association of Firefighters Local 4420's Response in Opposition to Plaintiffs' Bill of Costs (Dkt. # 381).

### *Background*

Plaintiffs filed their initial complaint in state court on November 25, 2009. Defendant Pasco County, Florida (the "County") removed the case to this Court on December 29, 2009. Booth brought claims of discrimination and retaliation against the County pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*, ("Title VII"), the Florida Civil Rights Act, §760.0-11 ("FCRA") and 42 U.S.C. §1981 ("§1981"). Brown brought claims of retaliation against the County pursuant to Title VII, the FCRA and §1981. Plaintiffs brought retaliation claims against the International Association of Firefighters Local 4420 d/b/a Pasco County Professional Firefighters (the "Union").  The Court disposed of many of Plaintiffs' claims through dispositive motions, retaining only the retaliation claims for trial.

A six-day trial commenced on January 23, 2012, upon Booth and Brown's retaliation claims. Plaintiffs asserted over fifty separate retaliatory actions against the County and the Union and demanded $130,884.00 in back pay and unspecified damages for emotional pain and mental anguish. At the conclusion of the trial, a jury found that the County retaliated against Plaintiffs by subjecting them to fitness-for-duty examinations which ironically occurred long after the complaint was filed. None of the actions set forth in the complaint against the County was deemed by the jury to be retaliatory.

The Court took away the fitness-for-duty finding post-judgment because the County merely responded to the Plaintiffs' affidavits that they felt unsafe on the job, and that their

co-workers might let them die fighting a fire. While acknowledging that the "factual question is extremely close," the Eleventh Circuit reversed, stating that the determination was within the realm of fact finding by the jury.

The jury awarded Booth $500.00 for missing one day of work to attend the fitness-for-duty examination and $10,000.00 in compensatory damages and awarded Brown $500.00 for missing one day of work and $12,000.00 in compensatory damages.  As to the Union, out of numerous claims of retaliation, the jury found only one had merit: that the Union retaliated against Plaintiffs by providing information regarding their EEOC complaints in the "legal update" memorandum circulated to all union members which included commentary that the complaints could lead to high legal fees which would increase the dues. The jury awarded damages in the amount of $8,000.00 to each Plaintiff for punitive damages, and $75,000.00 to each Plaintiff for pain and suffering, for a total of $189,000.00. The damages were upheld on appeal.

## *Discussion*

### I.       Legal Standard

Calculating an appropriate fee award under federal law involves a two-step process. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).   The Court first calculates the "lodestar" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate.   *See id.*   The court may then adjust the lodestar upward or downward based on an evaluation of the factors articulated in *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983) that have not been

subsumed in the lodestar calculation. *See id.*; *see also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1]

The twelve factors to be considered in determining the reasonableness of attorneys' fees are: (1) the time and labor required; (2) the novelty and difficulty of the question involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment due to acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

In determining the appropriate number of hours to be included in a lodestar calculation, the district court must exclude hours "that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The party seeking the award should provide documentary evidence to the Court concerning the number of hours spent, and how it determined the hourly rates requested. *Id*. at 433. "Objections and proof from fee opponents concerning hours that should be excluded must be specific and reasonably

---

[1]The Eleventh Circuit has adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

precise." *ACLU v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). (internal quotations omitted).

The Eleventh Circuit has recognized that "[u]ltimately, the computation of a fee award is necessarily an exercise of judgment[] because 'there is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436). The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Webb v. Dyer County Bd. of Educ.*, 471 U.S. 234, 242 (1985). *See also Barnes*, 168 F.3d at 427. Thus, the applicant must produce satisfactory evidence that the requested rate is within the prevailing market rates and support the number of hours worked and the rate sought. *See Hensley*, 461 U.S. at 433.

## II.    Attorneys' Fees

As the prevailing parties, Booth and Brown are entitled to statutory attorneys' fees and expenses of litigation under 42 U.S.C. §1988, 42 U.S.C. §2000e and §760.11(5), Florida Statutes. Plaintiffs' entitlement to attorneys' fees include reasonable fees they expended in litigating their entitlement to fees. *See e.g., Johnson v. University College*, 706 F.2d 1205, 1207 (11th Cir. 1983), *cert. denied*, 464 U.S. 994, 104 S. Ct. 489 (1983) (a prevailing party's counsel may seek reasonable compensation for litigating his or her own claim for entitlement to fees).

Plaintiffs had two separate law firms during this litigation. The Law Offices of Cynthia N. Sass, P.A. ("Sass") and the Kirwin Law Practice ("Kirwin"), both of whom seek fees against Defendants. Sass seeks an award of attorneys' fees in the total amount of

$724,533.28, $486,181.08 of which Sass attributes to work before and during trial: $238,500.50 to the County and $247,680.58 to the Union. Sass also seeks $7,377.25 in expenses and $22,189.06 in statutory costs. Kirwin, who only handled the trial along with the Sass firm, seeks a total award of attorneys' fees in the amount of $177,415.00 jointly and severally against the County and the Union. Kirwin's requested fees are in addition to the fees requested by Sass.

Sass requests attorneys' fees for the appeal in the amount of $115,135.00 against the County and $88,091.25 against the Union and expenses in the amount of $5,415.49. Sass seeks $11,643.70 against the County and $7,108.75 against the Union in fees for litigating entitlement to appellate fees, and Sass seeks fees for litigating entitlement to fees in the amount of $16,373.50 for trial. This fee includes compensation for fees expended in retaining Attorneys Phyllis J. Towzey and Matthew K. Fenton as expert witnesses as well as fees expended by Attorney Yvette D. Everhart and Attorney Jennifer D. Zumarraga in preparing the fee motion.

The County argues that the reasonable amount of attorneys' fees through trial is $40,000.00 and that there should be no recovery for costs and expenses. Plaintiffs only succeeded on their retaliation claim based solely on the fitness-for-duty examinations, which occurred after summary judgment. The County argues that since the sole issue upon which Plaintiffs prevailed occurred during the litigation, Plaintiffs' counsels' efforts in the pleadings, discovery, and dispositive pre-trial motions, which is the great bulk of their efforts, had nothing to do with the sole conduct which formed the basis of their recovery.

6

The Union argues that the majority of Plaintiffs' claims were against the County and in any event they only prevailed on a small discrete claim against it related to the "legal update" memorandum. The Union argues that the Court should award $66,267.50 in attorneys' fees. It also argues that the Union is unable to pay more in attorneys' fees because its sole source of income is dues from its voluntary members. The dues are currently $15.00 per month which yields an annual income of $68,400.00. Out of that revenue, the Union must pay $37,200.00 in operating expenses which include salaries, rent, utilities and website maintenance. The remainder of the funds must cover all other expenses.

### a.  Reasonable Rate

Sass requests the following rates for the attorneys in her office: Sass - $375.00 per hour, Papas- $350.00 per hour, Presswood - $350.00 per hour, Wise - $350.00 per hour, Jones - $250.00 per hour, Zumarraga - $250.00 to $275.00 per hour, and Everhart - $175.00 per hour. For clerks and paralegals, Sass requests between $50.00 and $130.00 per hour. Sass also requests $325.00 per hour for Towzey and $425.00 per hour for Fenton, both of whom provide expert affidavits regarding the reasonableness of the rates and fees requested in her Motion. Kirwin requests a rate of $350.00 per hour.

The County objects to the rates of Mr. Papas, Ms. Presswood, and Ms. Everhart as unreasonable based on recent awards for similar cases in the Middle District of Florida. In *Johnson v. Potter*, 8:08-CV-1279-T-24TGW, 2011 WL 672347, at *5 (M.D. Fla. Feb. 17, 2011), the Court evaluated a fee application from Sass' office involving a case alleging employment discrimination and retaliation.  The Court reduced Ms. Zumarraga's hourly

rate from $250.00 to $200.00 and concluded that the remaining rates were reasonable[1]. *Id.* at * 3. The Union adopts and incorporates much of the County's arguments that the rates are unreasonable and requests a reduction of rates for several of the attorneys.

The Court may use its discretion and expertise to determine the appropriate hourly rate. *See Scelta v. Delicatessen Support Services*, 203 F.Supp. 2d, 1328, 1331 (M.D. Fla. 2002). Based on careful consideration of the parties' arguments and expert declarations, the complexity of the case, and the Court's own expertise and judgment, the Court finds that the majority of the attorneys' requested rates are reasonable and supported by case law from this district. *See Fielder v. Shinseki*, No. 8:07-CV-1524-T-TBM, 2010 WL 1708621 (M.D. Fla. April 26, 2010); *Stefen v. Akerman Senterfitt*, No. 8:04-CV-1693-T-24-MSS, 2007 WL 1601750 (M.D. Fla. Jun. 1, 2007). The Court takes exception to Towzey's rate of $450.00 per hour which the Court will reduce to $325.00.

### b. Reasonable Hours

Plaintiffs' attorneys claim a total of 2,404 hours for work expended in this case against both the County and the Union through trial.  The case spans five years, and involved twelve depositions, extensive written discovery, five different motions to dismiss, four amended complaints, and two summary judgment motions. Further, the trial lasted six days with twelve witnesses, 75 trial exhibits and six volumes of transcripts. Plaintiffs assert that the case was "relatively complex" for an employment discrimination claim since it

---

[1] For attorneys: Constantine Papas—$300.00/hour; Jennifer Zumarraga—$250.00/hour; Cynthia Sass—$350.00/hour; Kendra Presswood—$300.00/hour; James Jones—$250.00/hour; and Yvette Daniels—$150.00/hour; for paralegals: Jana Olney—$115.00/hour for 360.70 hours; Elaine Glotz—$90.00/hour, and Candy Stead—$90.00/hour; for law clerks: $130.00 per hour for Brian Gilbert and Kristen Hersemann.

involved two plaintiffs, two defendants, numerous claims, and varied factual circumstances supporting each claim.

Sass claims her firm expended 945.3 hours against the County and 951.8 hours against the Union. Sass asserts that the firm has exercised billing judgment and deducted a significant amount of hours. Sass relies on the affidavits of attorneys Towzey and Fenton to support the reasonableness of the hours expended. Some of the billing entries were billed jointly against both Defendants which Sass divided evenly between the County and the Union.

Kirwin claims 506.9 hours to prepare for and attend trial. She kept time contemporaneously and each entry provides a description of the work completed, dates and hours. Kirwin states that she reviewed the time to make sure she was not seeking time for work that would not properly be billed to a fee paying client. Kirwin began representing Plaintiffs on November 30, 2011, for the trial that began on January 23, 2012. This was after the close of discovery and dispositive motions. She argues that the trial issues at that point were "inextricably intertwined" such that the work she completed was absolutely necessary to proceed against both Defendants. Therefore, she argues, the Court can evenly allocate the fees between the County and the Union.

The County opposes the hours Sass spent unsuccessfully litigating all of the issues except the fitness-for-duty examinations. Therefore, it requests a reduction of hours to 300.7 hours.   The County further argues that much of the billing entries are redundant and there was no need for eight different attorneys to bill on the matter.   Therefore, the Court should reduce the attorney hours by 144.3 hours, and the paralegal hours by 85.9 hours.

Further it argues that 20 hours are attributable to clerical tasks which are not recoverable. It also objects to 41.6 hours as non-compensable against it because they relate to work solely against the Union. As to Ms. Presswood's time, the County argues that it is clearly excessive since she billed 642.6 hours for preparation of a "straightforward" retaliation trial which lasted six days, in addition to the 343.7 hours billed by an associate.

As to Ms. Kirwin's time, the County argues that it is excessive given the total hours billed within a two month period (averaging 63 hours per week including the weeks of Christmas and New Year's Day) and it includes duplicative time conferring with Ms. Presswood, and reviewing pleadings and discovery. The County argues that Sass has not justified involving Ms. Kirwin in the trial of this case given the level of experience of the lead attorneys already in place. It therefore requests that all of her time be stricken. The County argues that the lodestar amount should be $91,627.00.

The Union objects to the time for depositions of the County witnesses which total 142.8 hours. It also objects to Ms. Kirwin's time as redundant with Ms. Presswood's time, especially in preparation for examining the Union's one witness, Ralph Grant. It otherwise objects to the hours billed as unreasonable and excessive adopting many of the arguments made by the County. The Union concludes that the lodestar amount should be $66,267.50 total.

The Court agrees with the Defendants that the requested amount of attorneys' fees is excessive in light of the claims and potential for recovery in this case. Further, the Plaintiffs achieved limited success.  Both Plaintiffs continued to work for the County during the pendency of this litigation. They argued that they lost time for "time swaps" and

potential overtime, which at the time of closing arguments totaled $130,844.00. It is clear from the County's cross-examination of Plaintiffs that it had no responsibility for "swap time" which was a voluntary act among employees, nor would they have used all of the potential swap and overtime opportunities even if it had been available.

Sass thought it necessary to have Kirwin join in the representation at a late stage in the litigation. The decision inevitably created more fees since Kirwin needed to familiarize herself with the facts of the case. Sass does not offer a satisfactory explanation as to the necessity of bringing in Kirwin to conduct the trial given Ms. Presswood's familiarity with the case and her experience. Kirwin also had an opportunity to assess the potential for recovery given her late entry into the litigation and should have assessed the value of the claim prior to deciding to conduct the trial on such a short time frame. Nonetheless, she did participate substantially in the trial and contribute to the Plaintiffs' recovery in this case.   Although both Sass and Kirwin exercised billing judgment, there remains redundancy in the billing records.

The Court is cognizant that when prospects of damages are low, vindication is important. However, attorneys also need to be realistic about the potential monetary recovery in a particular case, and further consider the collectability of the judgment they might actually recover. *See City of Riverside v. Rivera*, 477 U.S. 561, 585 (1986) ("Where recovery of private damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought. In some civil rights cases, however, the court may consider the vindication of constitutional rights in addition to the amount of damages

recovered.")   In this case, the Union has consistently maintained that it has limited financial resources since its only source of income is voluntary membership dues. The Court can take into consideration a litigant's limited financial resources when deciding an attorneys' fee award. *See Baker v. Alderman*, 158 F. 3d 516, 528 (11th Cir. 1998) ("the law of this circuit is clear that ability to pay should be considered in the award of attorney's fees under § 1988").

Further, the Court reviewed the opportunities for settlement throughout the case. Significantly, the Plaintiffs offered to accept $50,000.00 each in back pay, compensatory damages, and attorneys' fees including an agreement for a consent judgment to settle the case before summary judgment.   The consent judgment was onerous and never seriously obtainable.   The requested consent judgment included the following terms: (1) that the County agree to enjoin future retaliation against Booth and Brown with the Court retaining jurisdiction for any claims of future retaliation; (2) restoration of all vacation and/or sick time used by them to complete the fitness-for-duty process; (3) a statement from the County and the Union that the Union's statement in the legal update memorandum was "erroneous," that the EEOC and the Court agreed that the Union's statement was retaliatory and that any increase in the Union's dues were attributable to the Union's decision to litigate; (4) posting of the aforementioned statement in the same way the legal update memorandum was posted; (5) an independent investigation by a neutral third party at the County's expense into the County's continuing discrimination and retaliation; (6) department-wide training for all employees regarding their right to be free from

12

discrimination; and (7) an agreement that Booth and Brown could attend promotional classes with pay during scheduled shifts.

The County offered $50,000.00 to settle the claims early on, but the demand for the consent judgment doomed any hope of a resolution.

The Court concludes that 678.5 is a reasonable amount of hours expended in litigating this case up to but not including trial, and that 118 hours is a reasonable amount of hours expended in preparing for and conducting the trial, and 13 hours is a reasonable amount of hours expended in litigating entitlement to attorneys' fees.

## III.     Calculation of the Lodestar

The Court further concludes that the lodestar is $190,835.00 for litigating the case and $3,350.00 for litigating entitlement to fees.   The breakdown of the hours and rates are as follows:

**Fees incurred through trial**

Papas: $325.00 per hour x 75 hours = $24,375.00
Presswood: $325.00 per hour x 250 hours= $81,250.00
Everhart: $175.00 per hour x 100 hours=$17,500.00
Wise:  $350.00 per hour x 5 hours= $1,750.00
Vaga: $130.00 per hour x 10.5 hours= $1,365.00
Olney:$115.00 per hour x 150 hours= $17,250.00
Stead: $90.00 x 50 hours = $4,500.00
Glotz: $90.00 x 18 hours = $1,620.00
Case Clerk: $50.00 x 20 hours= $1,000.00
**Total = $150,610.00**

**Fees incurred for trial preparation and trial**

Kirwin: $350.00 per hour x 75 hours = $26,250.00
Presswood: $325.00 per hour x 43 hours = $13,975.00
**Total = $40,225.00**

**Fees for litigating entitlement to Fees**

Everhart:      $225.00 per hour x 5 hours = $2,250.00
Zummaraga   $250.00 per hour x 5 hours = $2,500.00
Towzey        $325.00 per hour x 3 hours = $975.00
**Total = $3,350.00**

## IV.      Reduction of the Lodestar

Both the County and the Union argue that the Court should reduce the lodestar amount to $40,000.00 due to the Plaintiffs' limited success on their claims. The County argues that since Plaintiffs recovered less than one tenth of one percent of the damages sought at trial[2], only prevailed on one out of fifty alleged retaliatory acts, and had most of their claims dismissed prior to trial, the lawyers achieved very little success.   The Union makes a similar argument regarding Plaintiffs' limited success since it only prevailed on the one issue regarding the legal update memorandum.

Brown's claims revolved around retaliation, on which he prevailed. Booth, on the other hand, brought retaliation and discrimination claims, and only prevailed on retaliation. Sass asserts that she only accounts for the time dedicated to pursuing the retaliation claim, and all time spent on issues that bore no relation to retaliation were deducted from the billing statement.   Kirwin asserts that since her time was for preparing for and conducting the trial, all her time relates to the retaliation claims.

---

[2]  The County argues throughout its Response in Opposition that the Plaintiffs sought $500,000.00 against it in back and front pay and the jury only awarded $500.00 - thereby resulting in an award of one-tenth of one percent. However, it is unclear to the Court how the County calculated the $500,000.00 figure, and neither Plaintiff adopted that specific amount.

14

The Plaintiffs' limited success does not strip them of prevailing-party status, but the degree of the success is "the most critical factor in determining the reasonableness of a fee award." *Bivins v. Wrap It Up, Inc.*, 380 Fed. App'x. 888, 890-91 (11th Cir. 2010) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)).   There is a strong presumption that the lodestar reflects a reasonable sum the attorneys deserve. *Id*. A small award does not "automatically indicate that a particular case is of little importance." *Id*. at 891 (quoting *Gray ex rel. Alexander v. Bostic*, 570 F.3d 1321, 1324 (11th Cir. 2009)). However, if the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. *Norman*, 836 F.2d 1292, 1302. In reducing the hours, the Court may either conduct an hour-by-hour analysis or it may reduce the hours using an across-the-board cut. *Bivins,* 380 Fed. App'x. at 891.

The Court has reviewed the *Johnson* factors and concludes that   (1) the time and labor required to litigate this case was not particularly cumbersome; (2) the civil rights violations at issue in this case, discrimination and retaliation, were not particularly novel and difficult; (3) the attorneys required a moderate amount of skill to perform the legal services properly; (4) Sass' preclusion of other employment due to acceptance of this case does not appear particularly at issue, however Kirwin did demonstrate that she had to forego other work given the short time frame to prepare for trial; (5) the fees appear higher than what is customary in this case; (6) the fees are contingent; (7) the time limitations imposed by the client or other circumstances on Ms. Kirwin were substantial; (8) the amount of financial damages involved was not substantial, and the results obtained was a small fraction of Plaintiffs' demands;   (9) all of the attorneys in this case are experienced

in the area of employment law; (10) this case had low potential for monetary recovery and therefore was somewhat undesirable; (11) Sass has been working with the Plaintiffs since at least 2009, Kirwin began representing the Plaintiffs very late in the litigation; and (12) other courts have reduced the lodestar based on limited success of the litigants in similar cases.

The Court recognizes that "vindication of a constitutional right against a government institution heightens a lawsuit's public benefit by deterring future unconstitutional conduct by public officials." *Villano*, 254 F.3d at 1307; *see also Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir. 1987) ("the affirmation of constitutional principles produces an undoubted public benefit that courts must consider in awarding attorneys' fees under Section 1988."). However, a Court may find that court enforcement of a constitutional right does not foreclose a reduction in the lodestar amount. *Popham*, 820 F.2d at 1580; *Smith v. Chandler*, No. 6:11-CV-1332-ORL-31, 2013 WL 3323187, at *2 (M.D. Fla. Jul. 1, 2013) ("On balance, a 50% reduction in fees takes into account the *de minimus* award, while still recognizing the public benefit provided by successful civil rights claims.").

The Court concludes that the total attorneys' fees requested is unreasonably high given the limited potential for a large monetary recovery in this case. There is also redundant billing between Sass and Kirwin. It is clear based on the billing records that it would be virtually impossible for the Court to separate the time spent on Plaintiffs'

successful and unsuccessful discrimination claims.[3] Therefore the Court will reduce the lodestar by approximately 52% for the fees leading up to trial and for litigating entitlement to fees and by 37.8% for the fees for conducting the trial. *See Fielder v. Shinseki*, 8:07-CV-1524-T-TBM, 2010 WL 1708621, at *4 (M.D. Fla. Apr. 26, 2010) (reducing lodestar based on partial success on multiple claims of discrimination and retaliation).   *See also Popham*, 820 F.2d at 1581 (affirming a 67% reduction when the plaintiff prevailed on only one of eight claims submitted to the jury and received a compensatory damage award of $30,000 after requesting $2,000,000). *But see Villano*, 254 F.3d at 1304 (distinguishing *Popham*, and vacating order reducing attorneys' fee award where the Court did not consider whether the results were "excellent" and whether the result created a public benefit).   *See also Potter*, 2011 WL 672347, at *4-5 (reducing lodestar by 45% because where plaintiff succeeded on one of two claims and failed to segregate the hours).

Consequently, the Court concludes that Plaintiffs shall recover $76,000.00 in attorneys' fees up to, but not including trial, all of which shall be paid to Sass, and allocated $25,000 to the County and $51,000.00 to the Union. This amount includes fees for litigating entitlement to fees. Plaintiffs shall also recover $25,000.00 in attorneys' fees for trial, all of which should be paid to Kirwin, and allocated $12,500.00 to the County and $12,500.00 to the Union.

---

[3] The Court would also like to note that Sass presented the Court with three different sets of attorneys' fees calculations, once in the Motion, once as a demonstrative aid filed prior to oral argument, and another presented at oral argument. Clearly, deciphering the billing records and allocating the time to the appropriate party has proven to be an onerous task for both Sass and this Court.

## V.        Fees on Appeal

Plaintiffs request fees for their appeal in the amount of $115,135.00 for 353.35 total hours for the appeal against the County and $11,643.70 for 36 hours litigating entitlement to attorneys' fees. Plaintiffs request $88,091.25 for 247.80 hours for the appeal against the Union and $7,108.75 for 24.1 hours litigating their entitlement to attorneys' fees.

The Court, having reviewed the same factors discussed above, concludes that the reasonable rate for Davis is $350.00 per hour and the reasonable rate for Presswood is $325.00 per hour. The reasonable amount of hours litigating the appeal is 180 hours. Therefore, the lodestar is $61,500.00 for all attorneys' fees related to the appeal. Due to the Plaintiffs redundancy in the billing for the appeal, the Court will reduce the lodestar by 50% to $30,750.00. Plaintiffs shall recover $15,375.00 from the County and $15,375.00 from the Union.

## VI.       Expenses

Plaintiffs seek an award of their expenses, outside of the statutory costs, in the amount of $7,377.25 which includes $750.00 for court-ordered mediation, $4,770.00 for a financial analyst, $1,713.36 for research and $143.89 for postage. Plaintiffs attribute $3,993.84 to the County and $3,383.41 to the Union. The County and Union object to all of the expenses as being non-recoverable.

The Eleventh Circuit has authorized the award of non-statutory costs as part of the overall fee award in a Title VII action. *See Fielder v. Shinseki*, 2010 WL 1708621, at *4 (citing *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("We hold that, with the exception of routine office overhead normally absorbed by the practicing attorney,

all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988.")).

Plaintiffs provide no explanation as to the necessity of the services of the financial analyst, and they are not entitled to fees for research and postage as those costs are part of the firm's overhead. The Court awards the remainder as follows: $375.00 against the County and $375.00 against the Union for a total of $750.00.

## VII.      Costs

Plaintiffs request the following costs: $875.00 for fees of the Clerk, $2,557.00 for service of summonses and subpoenas, $13,457.79 fees for transcripts, $3,193.58 for printing, $986.54 for witness fees, $568.15 for exemplification and copies necessarily obtained for use in the case, $551.00 as costs shown on the Mandate of the Court of Appeals (against the Union only), for a total of $22,189.06.   Plaintiffs attribute $11,155.88 to the County and $10,700.88 to the Union.

Prevailing parties are entitled to recover costs as a matter of course unless otherwise directed by the Court or statute. *See* Fed.R.Civ.P. 54(d)(1). However, courts may only tax costs as authorized by statute. *See EEOC v. W & O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000), *reh 'g and reh 'g en banc denied*, 233 F.3d 580 (11th Cir. 2000) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)).

Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d) which includes costs for the following:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2014).

Where a party challenges the costs requested, the burden lies with the challenging party. *See EEOC v. W & O, Inc*., 213 F.3d at 621 (finding that challenging party did not demonstrate that any portion of the depositions were not "related to an issue which was present in the case at the time the deposition was taken."). The Eleventh Circuit has held that the taxation of deposition costs comes within the parameters of this section. *Id.* at 620. "The question of whether the costs for a deposition are taxable depends on the factual question of whether the deposition was wholly or partially 'necessarily obtained for use in the case.' " *Id*. at 620–21. Further, "obtaining deposition transcripts for use during discovery may be taxable as long as it is necessary to the issues in the case when the deposition was taken." *Sensormatic Electronics Corp. v. Tag Co. US*, No. 0681105CIV, 2009 WL 3208649, at *5 (S.D. Fla. Oct. 2, 2009).

The Court concludes that Booth and Brown as the prevailing parties are entitled to all their requested costs and shall recover $11,155.88 against the County and $10,700.88 against the Union.

*Conclusion*

Plaintiffs are entitled to attorneys' fees for litigation through trial in the total amount of $101,000.00. Plaintiffs are entitled to attorneys' fees for the appeal in the total amount of $30,750.00. Plaintiffs are also entitled to costs in the amount of $21,856.76 and expenses in the amount of $750.00. The County is responsible for a total amount of $64,405.88; of which it shall pay $12,500.00 to Kirwin and the remainder to Sass. The Union is responsible for a total of $89,950.88, of which it shall pay $12,500.00 to Kirwin and the remainder to Sass.

It is therefore **ORDERED AND ADJUDGED** that:

1.   Plaintiffs' Application for Attorneys' Fees and Litigation Expenses with Memorandum of Law in Support (Dkt. #303) is GRANTED in part in the amount of $50,764.57.

2.   Plaintiffs' Application for Attorneys' Fees against the County and Memorandum of Law in Support (Dkt. #372) is GRANTED in part in the amount of $25,985.43.

3.   Plaintiffs' Counsel Kathleen D. Kirwin's Application for Attorneys' Fees against Defendant Pasco County, Florida and the International Association of Firefighters Local 4420 with Memorandum of Law in Support (Dkt. #368) is GRANTED in part in the amount of $25,000.00.

4.   Booth and Brown's Amended Motion for Attorneys' Fees and Expenses on Appeal (Dkt. # 387) is granted in part in the amount of $30,750.00.

5.   Booth and Brown's Amended Bill of Costs (Dkt. #361) is granted in the amount of $21,856.76.

6.      The Clerk of Court is directed to enter judgment in favor of Booth and Brown and against Pasco County, Florida in the amount of $64,405.88.

7.      The Clerk of Court is directed to enter judgment in favor of Anthony Booth and Jerry Brown and against International Association of Firefighters Local 4420, d/b/a Pasco County Professional Firefighters in the amount of $89,950.88.

**DONE** and **ORDERED** in Tampa, Florida, this 19th day of February, 2015.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2009\09-cv-2621 fees and costs.docx